In re William A.
**RICHARDSON, Debtor.**

**Bankruptcy No. 89 B 12474 J.**

United States Bankruptcy Court,
D. Colorado.

April 5, 1990.

James R. Benson, Jr., James R. Benson, Jr., P.C., Denver, Colo., for debtor.

Mark L. Fulford, Sherman & Howard, Denver, Colo., for Bank of Burlington.

William H. Bass, Pendleton & Sabian, P.C., Denver, Colo., Chapter 12 Trustee.

MEMORANDUM OPINION
AND ORDER

ROLAND J. BRUMBAUGH,
Bankruptcy Judge.

THIS MATTER came on for hearing on March 14, 1990, on the Debtor's Motion to Confirm his Chapter 12 Plan.

The case was originally filed on September 13, 1989. The first Plan filed by the Debtor on December 12, 1989, and at a confirmation hearing held on January 10, 1990, the Court refused to confirm the Plan because it totally failed to provide for the secured claim of the Bank of Burlington ("Bank") ordered that the Debtor file a new plan within ten days. The Amended Plan was filed January 22, 1990. Attached to the Amended Plan was the Debtor's projected Cash Flow Statement for the years 1990, 1991, and 1992. On February 7, 1990, the Bank filed its Objection to the Amended Plan and its Motion to Dismiss Petition for Bad Faith and Other Cause. The Debtor responded to the Bank's Objection and Motion to Dismiss on February 22, 1990.

▮ As a preliminary matter at the hearing on March 14, 1990, the Court took evidence on the issue of whether the Debtor was a "family farmer" under 11 U.S.C. § 101(17)(A). The Debtor, in a Supplement to his Statement of Affairs filed October 2, 1989, showed farming income of $57,401.56 and non-farm income of $59,844.44 for the tax year 1988. However, the Debtor explained that this was in error because, as is shown on Debtor's Exhibit A (1988 Federal Tax Return—Schedule F) he reported a total of $98,110 as gross farm income for 1988. He further explained that on his Supplemental Statement under non-farm income where he reported $39,708.44 as income from Turf and ornamental spraying business was not all non-farm income. Rather, a good portion of that income was derived from his business of spraying other farmers' crops, and the balance was for spraying lawns and shrubs on residences.

§ 101(17)(A) specifies that a "family farmer" means

(A) individual ... engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts [except debts on his principal residence], on the date the case is filed, arise out of *a farming operation* owned or operated by such individual ... and such individual ... receive[s] *from such farming operation* more than 50 percent of such individual's ... gross income for the [preceding taxable year]. [Emphasis added].

This particular Debtor does engage in his own farming operation, i.e. the raising of crops, on leased land. He also contracts out his services to other farmers to spray their crops, and he contracts out spraying services to residential customers for their lawns and ornamental shrubs. Clearly, his income from planting and harvesting crops (even though it is on leased land) arises out of a farming operation operated by the Debtor. Equally as clear is the fact that the income derived from contract spraying operations on residential property for others does not arise out of a farming operation. The issue is whether his income from contract spraying on other farmers' crops arises out of a farming operation operated by the Debtor. The statute is quite clear. To be "farm income" it must be received from *"such farming operation."* "Such farming operation" refers directly to the previous part of the statute to mean "a farming operation owned or operated" by the Debtor. The Debtor neither owns nor operates the farms where he contracts his spraying services. The evidence was clear that, other than the ordinary business risks of any creditor, the Debtor assumes none of the ordinary "farming" risks. The evidence was that the Debtor *does not* take a percentage of the crops sprayed as his compensation, but rather charges a specific amount for his services. He stands in the same position to his spraying clients as does the merchant who sells the farmer seed and fertilizer, or the banker who loans the farmer money to operate. Neither the merchant nor the banker would be considered to derive their income from "a farming operation." Yet they run the same business risks as does the Debtor of not getting paid if the farmer's crop fails. Debtor's income from spraying contracts cannot be considered as "farm income." Thus, if the $60,340 listed on his Schedule F of this tax return is properly deducted from this $98,110 gross farm income, he would have only $37,770 of "farm income" as that term is defined in § 101(17)(A) and

the Debtor is not eligible to file a Chapter 12 petition.

 However, if the Debtor were eligible to file a Chapter 12 petition, the Court still could not confirm his Amended Plan for the following reasons.

The Plan is not feasible. Contrary to the Cash Flow Statement attached to the Debtor's Amended Plan, he submitted a new Statement at the hearing (Debtor's Exhibit B). The new Statement showed that he had $25,000 as of January 1, 1990. Yet admitted that this was an error. He in fact had already paid out $11,000. If this $11,000 adjustment is made throughout the Statement it shows that very soon the Debtor is in a negative cash flow situation and there was no evidence as to how he was going to remedy that situation.

The Amended Plan also proposes to pay only 0.6% on principal to the Bank each year for three years and at the end of the 3 years the Bank's loan is to be refinanced. There was no evidence as to the possibility or probability of such refinancing.

The interest proposed to be paid to the Bank over the three year period was 11%. In support of the reasonableness of that rate the Debtor presented the testimony of Dr. Norman Dahlstead. However, the Court finds his testimony not to be credible. He testified that he thought the payments to the Bank during the plan were based on a 5 year amortization, when the Amended Plan actually calculates these payments on a 30 year basis. He also thought the Bank's loan was to be re-amortized at the end of 5 years, not that the Debtor would have to come up with the balance of the loan to the Bank with a balloon payment. Thus, his bald statement that he thought that 11% was reasonable cannot be accepted by the Court. Rather, the Court accepts the Bank's evidence the minimum reasonable interest rates would be 13½% on the farm equipment, 16–18% on the gun collection, and 12% on the residential property. It is, therefore,

ORDERED the Debtor's Motion to Confirm his Amended Plan is denied.

FURTHER ORDERED that the Debtor is ineligible to be in Chapter 12 and he shall have 10 days within which to convert this case to another Chapter or dismiss the case, failing which the case will be dismissed without further notice or hearing.