**In re Boyd Daniel EVANS et al., Debtor.**

**Bankruptcy No. 80–216–Orl–BK–GP.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Jan. 28, 1981.

James E. Foster, Orlando, Fla., for alleged debtor.

Bernard Sommers, Maitland, Fla., for petitioning creditor.

## FINAL JUDGMENT OF DISMISSAL

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE OLD saying that "Heaven has no rage like love turned to hatred, nor hell fury like a woman scorned" can hardly be better illustrated than by detailing this highly contested involuntary case, initially filed on April 23, 1980 by Naomi Lois Adams (Ms. Adams) against Boyd Daniel Evans, Sr. (Mr. Evans), her former husband. To be fair, the adage is equally applicable to scorned husbands who can be just as vicious and vindictive as scorned wives. To put this controversy between former spouses in the context of a bankruptcy proceeding is not easy and requires the consideration of some odd and unusual problems. This is especially true when warriors involved in this hotly, contested matter fought their battle, at least initially, in proper person without aid of counsel.

The original petition was filed by Ms. Adams and alleged in a fashion that Mr. Evans is generally not paying his debts, thus, it is proper to enter an order for relief under Chapter 7 against him pursuant to § 303(g) of the Bankruptcy Code.

Just like the original petition, the answer filed by Mr. Evans was also filed, as noted earlier, in proper person without the aid of counsel. The answer also included a Motion to Dismiss with prejudice and set forth all possible charges levelled against his former wife, some of which were asserted earlier in a bitter dissolution of marriage and child custody proceeding which is still pending in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida. The Answer and the Motion to Dismiss filed by Mr. Evans immediately spawned an avalanche of responses by Ms. Adams. For instance, to illustrate the absurd status of this case she filed an objection to the Motion to Dismiss with prejudice and a Motion to Investigate Perjury. In addition, Ms. Adams sought a contempt citation against several parties including the Circuit Judge in charge of the divorce proceeding, and the Special Master appointed to sell the marital property which was ordered to be sold by the Circuit Judge in the divorce proceeding.

In due course all pending matters were scheduled for hearing before the Honorable George L. Proctor, Bankruptcy Judge, to whom the case was originally assigned. However, on the date of the scheduled hearing, Mr. Evans filed a Motion to have the Judge reassign this case to another Judge. The Motion levelled some charges against

the Judge and on June 18, 1980, the Honorable George L. Proctor entered an order and recused himself, even though the charges were never substantiated, and the case was reassigned to the undersigned.

On July 9, 1980, Ms. Adams filed an amended petition, again without aid of counsel. The amended petition basically realleged the matters set forth in the original complaint, but included Manufacturers Leasing, Ltd. as a petitioning creditor who claimed to be a creditor of Mr. Evans.

After having denied all pending motions, in order to expedite the disposition of this matter, the undersigned set August 1, 1980 as the last day to exchange names and addresses of witnesses, to list documents to be offered in evidence and set August 5, 1980, as the last day to complete all discovery, and August 6, 1980, as the date for the Final Evidentiary Hearing.

Ms. Adams wasted no time to embark on an extensive discovery. First, she propounded a Request for Admissions under FRCP 36 setting forth 37 requests to Mr. Evans. Next, Ms. Adams also filed a Motion and sought leave to amend the pleadings and filed a Motion for Continuance on July 23, 1980. On the same day, she also filed a set of interrogatories consisting of 41 questions and also a Notice to Produce which sought practically everything but the kitchen sink from Mr. Evans except matters relevant to the sole issue to be tried which was the allegation that Mr. Evans generally does not pay his debts. On the same date, she also filed an amended creditor's petition, again without aid of counsel, which sought to add Central Florida Lumber and Supply, Inc. (Central Florida) and Lake Fredricka Apartments, Inc. (Lake Fredricka) as additional petitioning creditors. On July 20, 1980, the Court entered an order; granted the Motion to Amend, granted the Motion for Continuance and rescheduled the trial for September 2, 1980. This Order was entered over the objection filed by Mr. Evans who again attempted to retry the issues fought in the state court in the divorce proceedings. To retaliate, on August 14, 1980, Ms. Adams filed a Motion for Default Judgment on the ground that Mr. Evans failed to furnish the discovery requested.

On August 26, 1980, Mr. Evans filed an Answer to the amended complaint and, for the first time, through counsel. The Answer basically contains some admissions and some denials, but denies that Mr. Evans is indebted to Central Florida and also asserts for the first time as an affirmative defense, that the court lacks jurisdiction because the second amended petition was not served on Mr. Evans. Ms. Adams, who still appeared without counsel, at least on record, filed a Motion to Strike the Answer to the Request for Admissions; a Motion to Strike the Answer to the creditors second amended petition; and, a Motion for Summary Judgment. In the interim, the parties again bombarded each other with numerous motions and objections to motions, all primarily directed to discovery matters. Ms. Adams also filed several and voluminous affidavits in support of her Motion for Summary Judgment together with exhibits, all of which basically relates again to the divorce action pending in state court, none of which have any relevance to this controversy.

All pending Motions were heard in due course and on September 22, 1980, all motions filed by Ms. Adams were denied. This Order led, of course, to additional discovery, but now commenced by Mr. Evans himself. All these were basically directed to the other petitioning creditors who joined in the original petition, Central Florida, Lake Fredricka, and Manufacturers Leasing Ltd. Not to let this matter stay idle for a moment, Ms. Adams also filed her own set of interrogatories which consisted of 41 questions with numerous sub-questions. She also filed a second Request for Admissions. This in turn generated new controversies which required several additional hearings because neither of the parties were satisfied with the information furnished by the other and with the responses furnished by them to the discovery sought.

At this point, in order to put this matter in posture for a final resolution, this Court scheduled a status hearing. At this point,

Central Florida withdrew from the case as a petitioning creditor. Shortly thereafter, Ms. Adams and Manufacturers Leasing obtained assistance of counsel who filed his notice of appearance on behalf of these two remaining petitioning creditors. The discovery procedure continued thereafter without let up and with the usual constant skirmishes between the parties.

On December 11, 1980, after a duly scheduled and noticed hearing, this Court entered an order on all motions. The Order directed, inter alia, that Manufacturers Leasing and Lake Fredricka shall, within 15 days from the date of entry of the Order, furnish full and complete answers to the interrogatories heretofore served on them by Mr. Evans and also produce within 15 days all the documents requested by Mr. Evans in his Request to Produce. The Order also directed Ms. Adams to furnish full and complete answers to interrogatories No. 1 and 7 within 15 days and granted Central Florida's request to withdraw from the case as a petitioning creditor. The Order also set the final evidentiary hearing for January 14, 1981 and directed that all discovery shall be completed by January 9, 1981.

On December 15, 1980, John Bowden on behalf of Florida Hospital, who claimed that Mr. Evans is indebted to the Hospital in the amount of $5,000, filed a joinder in the petition, but on December 16, 1980, or the day after, it withdrew its petition to join in the involuntary case.

On December 22, 1980, Ms. Adams filed a motion to amend the pleadings. The proposed amendment alleged that since Mr. Evans has less than 12 creditors it is no longer necessary to have three petitioning creditors to maintain this action. The Motion was granted by this Court over an objection filed by Mr. Evans. The Order was entered on January 8, 1981. On the same date, this Court permitted Lake Fredricka to withdraw from the case and granted the remaining petitioning creditors ten days to procure additional petitioning creditors to join in the petition and in the event they are unable to obtain a joinder and there is less than three petitioning creditors remaining in the case, the Court indicated that the case will be dismissed without further hearing.

The Answer filed by Mr. Evans to the amended petition sets forth as an affirmative defense that he has more than 12 creditors. In compliance with Bankruptcy Rule 104(e) he also listed the names and addresses of his creditors. At this point, Mr. Evans moved to the jugular vein and filed a Motion for Sanctions pursuant to FRCP 37 based on the following grounds:

First, it is contended by Mr. Evans that by virtue of an Order entered by this Court on December 11, 1980, Manufacturers Leasing was directed to furnish full and complete answers and produce all documents described in the request to produce and that Manufacturers Leasing failed to comply with the provisions of the Order of December 11, 1980; second, it is contended by Mr. Evans that Manufacturers Leasing failed to furnish answers to additional interrogatories which were served on its counsel of record on December 6, 1980. Accordingly, so contends Mr. Evans, pursuant to FRCP 37(b)(2) this Court should enter an order prohibiting Manufacturers Leasing to introduce any designated matters into evidence. Thus, if these sanctions are imposed, according to Mr. Evans, the only valid and viable debt which can be established at the trial is the unpaid alimony owed to Ms. Adams in the amount of $1,500, which obligation is contested in the state court which is, of course, far short from the $5,000 required to maintain and prosecute an involuntary under § 303 of the Bankruptcy Code even if Mr. Evans has less than twelve creditors.

In addition, Mr. Evans also seeks not only a dismissal of the petition, but a retention of jurisdiction for the purpose of awarding him cost and expenses of this action pursuant to § 303(i)(1)(A), (B), (C).

■ Having considered the foregoing, this Court is satisfied that Mr. Evans' Motion to Impose Sanctions is warranted under the circumstances and Manufacturers shall be prohibited to present any evidence in support of its claim due to its failure to

obey the terms of the Order of December 11, 1980. This being the case, the Court is satisfied that Ms. Adams can no longer prosecute this involuntary case inasmuch as her claim against Mr. Evans which is based on unpaid alimony was only $1,500 maximum on the date the involuntary petition was filed and in light of the Answer filed by Mr. Evans, there must be three eligible petitioning creditors to prosecute this action.

■ There is one additional reason why this case should not remain and should be dismissed. Shortly after the case was filed, it became apparent that this is nothing but an extension and a rehash of a bitter domestic contest between feuding spouses, primarily centered around a property settlement; alimony and custody of the children, all matters which were and still are properly before the Circuit Court for the Eighteenth Judicial Circuit in and for Seminole County, Florida. It is now obvious that this entire mountain is made out of a molehill, and was conceived by Ms. Adams only as a tool to wreak revenge and to invoke the protection of the automatic stay of § 362 of the Bankruptcy Code under the mistaken assumption that the automatic stay would somehow prevent the sale of the former marital home ordered to be sold by the divorce court. This mistaken interpretation of this Section was sold by her even to the Circuit Judge before whom the divorce action is now pending. Thus, it is evident that this is not really a bona fide insolvency proceeding initiated by bond fide creditors and the right of the parties can and should be adjudicated by the State Court. Thus, if nothing more, this Court should abstain by virtue of § 305(a)(2)(B) and this case should be dismissed.

Although this Section requires, before dismissal, a notice and hearing, under these circumstances, this Court is satisfied that a dismissal is proper especially since the term "after notice and hearing" means only that such notice as appropriate in the particular circumstances, and such opportunity for a hearing as appears to be appropriate. § 1021(A) of the Bankruptcy Code.

Considering the long history of this litigation, it is clear that there was ample opportunity afforded to Ms. Adams to put her involuntary petition in a legally acceptable posture and it would not serve any purpose for any additional hearing; therefore, the dismissal is proper.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the involuntary petition as amended be, and the same hereby is, dismissed with prejudice for lack of sufficient number of eligible creditors as required by § 303(b)(1). It is further

ORDERED, ADJUDGED AND DE-CREED that in the alternative, this case shall be dismissed by virtue of applying the abstention provision of § 305(a)(1) of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DE-CREED that this Court expressly reserves jurisdiction for the limited purpose to consider the entry of a judgment pursuant to § 303(i)(1), (2).