David EFRON, Debtor.

David Efron, Appellant/Cross–Appellee,

v.

Madeleine Candelario, Appellee/Cross–Appellant.

BAP Nos. 14–027, 14–035.
Bankruptcy No. 11–02466–MCF.

United States Bankruptcy Appellate Panel
for the First Circuit.

April 21, 2015.

Charles A. Cuprill–Hernández, Esq., on brief for Appellant/Cross–Appellee.

Manuel Fernández–Bared, Esq., Ángel Sosa–Báez, Esq., and Linette Figueroa–Torres, Esq., on brief for Appellee/Cross–Appellant.

Before HILLMAN, BOROFF, and FINKLE, United States Bankruptcy Appellate Panel Judges.

FINKLE, Bankruptcy Judge.

The debtor appeals from the bankruptcy court's April 17, 2014 order and judgment in which it: (1) abstained and dismissed the case pursuant to § 305(a)(1); [1] and, alternatively, (2) dismissed the case pursuant to § 1112(b)(4)(E) and (P) due to the debtor's failure to comply with court orders requiring the payment of post-petition domestic support obligations. The debtor contends that dismissal was not in his or his creditors' best interests, and seeks reversal of the order and judgment and reinstatement of his bankruptcy case. The debtor's ex-spouse, Madeleine Candelario, filed a cross-appeal arguing that the case should have been converted to chapter 7 rather than dismissed because conversion was in the best interests of creditors.

For the reasons set forth below, we **AFFIRM** the bankruptcy court's decision.

### BACKGROUND

**A. The Pre–Petition Divorce Proceedings**

On May 3, 2001, the Commonwealth of Puerto Rico, Court of First Instance, San

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, et seq.

Juan Part ("CFI"), issued a divorce judgment dissolving the marriage of the debtor and Candelario. The CFI granted the debtor complete control over the marital assets, but ordered him to pay a monthly sum of $50,000 to Candelario for her maintenance until the marital assets were divided and liquidated.[2] The debtor never voluntarily made any of these payments, resulting in fierce litigation in the state courts that is still on-going with regards to the division of marital property and Candelario's efforts to collect the monthly payments from the debtor.[3] At a hearing on March 4, 2011, almost ten years after the issuance of the divorce judgment, the CFI determined the debtor owed Candelario at least $3,314,936.40 for past-due ordered payments, plus interest.

## B. The Bankruptcy Proceedings

On March 25, 2011, the debtor filed a chapter 11 petition, mainly to stay an order of execution to enforce the $50,000 monthly payment imposed by the CFI and to stay the state court proceedings.

Candelario filed a proof of claim asserting a $42 million claim for her share of the marital assets and past-due support payments, a motion for relief from the automatic stay to continue the state court proceedings, and a motion seeking an order compelling the debtor to make the monthly payments to her ordered by the CFI during the pendency of the bankruptcy case. The debtor objected to Candelario's claim and opposed the motions. After a hearing

on April 24, 2012, the bankruptcy court lifted the automatic stay, authorizing the state court actions to proceed.[4]

On August 20, 2012, Candelario objected to confirmation of the debtor's proposed plan of reorganization because the debtor was not current on the monthly payments ordered by the CFI and the plan did not provide for their payment. In his response, the debtor argued the payments were not domestic support obligations ("DSO") as defined by § 101(14A), but rather advances on Candelario's share of the marital assets, the amount of which was still being determined by the state court. At a confirmation hearing on August 29, 2012, the bankruptcy court determined confirmation could not occur until the dispute regarding the nature of the payments ordered by the CFI was resolved, and ordered the parties to seek an order from the CFI clarifying the nature of those payments. On September 21, 2012, the debtor and Candelario informed the bankruptcy court that the CFI declined to issue an interpretative order.

In January 2013, the bankruptcy court appointed an examiner to perform the duties set forth in §§ 1104 and 1106. The examiner's final report issued on October 4, 2013, however, was inconclusive regarding the appropriate reporting of the assets and liabilities of the debtor on his schedules and allegations relating to fraud, misconduct, mismanagement or irregularities in the management of the debtor's affairs.

2. Specifically, the CFI ordered:

 Based on the preceding FACTUAL and LEGAL grounds, which form an integral part of this DECISION, the Court orders and directs that: 1. The sum of $50,000.00 per month be established for enjoyment of property and cash amount that would enable her [Candelario] to maintain herself, which [debtor] shall pay to plaintiff Candelario....

3. There are two cases pending before the CFI—one is the divorce case and the other relates to the division of the marital assets.

4. On March 1, 2013, the CFI issued an amended judgment updating the amount owed by the debtor to Candelario to more than $5 million, plus interest for such past-due payments. The Puerto Rico Court of Appeals affirmed the amended judgment.

The examiner blamed this outcome on the debtor's failure to produce information pertaining to certain entities under his common ownership and management. He reported that he had "significant doubts regarding if all assets of [the debtor] were properly disclosed to [the bankruptcy court]."

On June 28, 2013, more than two years into the extremely contested bankruptcy case, the bankruptcy court entered an order (the "DSO Order") determining that the $50,000 monthly payments ordered by the CFI constituted DSO payments as defined by § 101(14A).[5] The debtor filed a timely notice of appeal of the DSO Order. He also requested a stay of that order pending appeal, which the bankruptcy court denied in an order dated September 16, 2013 (the "September 16, 2013 Order"). On October 1, 2013, the Panel dismissed the appeal as interlocutory.

In the meantime, on July 12, 2013, Candelario filed a motion requesting that the bankruptcy court direct the debtor to immediately commence making the monthly DSO payments in accordance with the DSO Order. On July 29, 2013, the bankruptcy court denied the motion for lack of jurisdiction due to the pending appeal. Candelario moved for reconsideration on the basis that she was not seeking to vacate or reverse the DSO Order, but was asking the court to direct the debtor to comply with the order. Candelario also filed a motion to convert the case to chapter 7 because of the debtor's on-going failure to comply with the DSO Order and with certain reporting requirements. The debtor opposed the motion, and the court scheduled the matter for hearing on October 23, 2013.

At the October 23, 2013 hearing, the bankruptcy court stated, among other things, that in denying the motion for a stay pending appeal, it intended for the debtor to commence making the monthly DSO payments, and it would "put on the docket a clarification that the intention of that order [ ] denying the stay pending appeal was to allow the enforcement of th[e DSO Order] to go forward." The bankruptcy court then entered an order (the "October 23, 2013 Order") in which it clarified that, in addition to denying the debtor's motion for a stay pending appeal, its September 16, 2013 Order also granted Candelario's motion for reconsideration to direct the debtor to comply with the DSO Order. The bankruptcy court held in abeyance the motion to convert, scheduling the matter for further hearing to consider whether: "(1) the matters in dispute between Debtor and creditor Ms. Candelario have been settled by the parties, (2) a plan is proposed which has alternate treatment as to Ms. Candelario['s] claim dependent upon the outcome of the state court litigation wherein the community property is being divided, or (3) the case should be converted or dismissed."[6]

At a hearing on January 22, 2014, before addressing scheduled matters, the bankruptcy court inquired about the bankruptcy purpose of the case. The debtor opposed dismissal and responded that he filed the case for two reasons—to attempt to reorganize through chapter 11 and as a "protective measure in view of the litigation with his ex-spouse," specifically to stay the proceedings pending in the CFI and avoid garnishments and attachments arising from those proceedings. He asserted that he had filed a feasible and confirmable plan of reorganization which

---

5. *See In re Efron,* 495 B.R. 166 (Bankr.D.P.R. 2013).

6. The debtor appealed the October 23, 2013 Order, but the Panel dismissed the appeal as interlocutory.

proposed alternative treatments for Candelario's claims. Although he admitted that he had made prior representations to the court that the matter was a two-party dispute regarding the division of marital property, he dismissed these as having been made in opposition to Candelario's motion to convert the case to chapter 7. He argued that the case was ready for confirmation and he could establish that he did not owe any money to Candelario. The debtor emphasized that Candelario was not his only creditor and his other creditors held claims in excess of $2 million which were to be paid through his plan. This, the debtor maintained, showed he filed the case not only to stay the actions pending in the CFI but also for the purpose of reorganization. Further, he argued there was no "final and firm order" from the CFI establishing that he owed anything to Candelario, nor was there a final order from the bankruptcy court ordering him to commence making DSO payments.

Candelario also opposed dismissal, stating that she had spent three years and significant resources convincing the bankruptcy court that the debtor held domestic support obligations that were entitled to priority and were nondischargeable, and she maintained all the other rights provided by the Bankruptcy Code as the holder of such claims. Dismissal of the case, she argued, would result in a waste of judicial resources and time. In addition, she contended the plan was not confirmable because it did not provide for payment of the post-petition DSO payments, and that conversion to chapter 7 was appropriate and in the best interests of creditors.

After hearing from the parties, the bankruptcy court ordered the debtor to show cause why it should not abstain from hearing the case because essentially it was a two-party dispute regarding the division of marital property which served no bankruptcy purpose (the "First Show Cause Order"). The bankruptcy court also informed the parties that any prior orders, including the DSO Order, would not be revisited and it would strictly adhere to the law of the case. All other matters were held in abeyance.

In his response to the First Show Cause Order, the debtor argued against abstention on the grounds that plan confirmation and determinations of claims are core matters, he had presented a confirmable plan, and permissive abstention under 28 U.S.C. § 1334(c) was not in the best interests of creditors and the estate. Candelario and UBS Financial Services of PR Incorporated also filed responses arguing against abstention.

On March 7, 2014, the bankruptcy court entered a second order to show cause (the "Second Show Cause Order") why the case should not be dismissed due to the debtor's failure to pay monthly post-petition DSO payments pursuant to the DSO Order. The court also ordered the debtor to demonstrate that he had made 37 monthly DSO payments totaling $1,850,000 or the case might be dismissed. The debtor appealed the Second Show Cause Order, which the Panel dismissed as interlocutory. In his response to the Second Show Cause Order, the debtor asserted that the bankruptcy court had not issued a final order regarding the DSO payments and was bound by decisions of the CFI and the Puerto Rico Court of Appeals that the monthly payments in issue were not alimony but advances to Candelario on her undetermined share of the marital property. He contended that, although the DSO Order determined the nature of the payments, it did not direct him to make any such payments to Candelario.

## C. The Dismissal Order

On April 17, 2014, the bankruptcy court entered the order which is the subject of this appeal (the "Dismissal Order")[7] in which it: (1) abstained and dismissed the case pursuant to § 305(a)(1); and, alternatively, (2) dismissed the case pursuant to § 1112(b)(4)(E) and (P) due to the debtor's failure to comply with court orders requiring him to make post-petition DSO payments.

In deciding to abstain under § 305(a)(1), the bankruptcy court held as follows:

The Court finds that this case serves no bankruptcy purpose since this is essentially a two party dispute between two bitter ex-spouses, who have engaged in over thirteen years of battle regarding the division of their community property. Without the final resolution of the matters between the ex-spouses in local court, the bankruptcy case will not move forward. It is unclear which assets are part of Debtor's estate due to the pending local court litigation which involves matters on both inheritance law as well as family law. As such, post-petition DSO will continue to accrue and a plan cannot be confirmed. Unlike the local court, the bankruptcy court is not specialized in family law and inheritance law. Deference must be given to the local court, considering they are addressing matters concerning local law and they are most familiar with the dispute because they have handled the divorce case and the division case since its inception.

*In re Efron,* 2014 WL 1572750, at *5.

The bankruptcy court further explained: This case is being held hostage by the excessive litigations involving Debtor and Candelario. Virtually every motion filed by Debtor was objected to by Candelario and vice versa. The parties were offered the opportunity to mediate, but one of the parties declined.... During the pendency of this bankruptcy case, Debtor and Candelario have spent excessive resources to litigate matters that they are also litigating in other forums. Having multiple litigations does not foster judicial economy. It is a waste of judicial resources and the parties are incurring in needless fees and costs by fighting in several forums. The parties' actions have not yielded any positive result for creditors or the estate. Considering that Debtor is proposing to pay creditors 100% of their claims and that no agreements made in the bankruptcy case will be affected the parties will not be adversely affected by dismissal. To this date, Debtor has successfully ignored orders of several courts to pay $50,000 per month to Candelario. "Because the Debtor thinks it would be happier in the Bankruptcy Court, does not entitle it to be here."

*Id.* (footnotes and citation omitted).

The bankruptcy court concluded that both the debtor and Candelario failed to establish that it would be in the best interests of all parties to continue with the case:

[A]bstention is the best course of action for the benefit of all parties involved in this case. Creditors will no longer have to watch two parties incur in vexatious and hostile litigation without collecting on their claims. Debtor concedes that any agreements reached with creditors in bankruptcy will not be affected if the case is dismissed and that no major issues with creditors other than Candelario exist. Therefore, creditors can address any issue they have with Debtor outside of bankruptcy without being prejudiced. All parties including Debtor

---

7. *See In re Efron,* No. 11–2466(MCF), 2014 WL 1572750 (Bankr.D.P.R. Apr. 17, 2014).

and Candelario will save the unnecessary and duplicative costs related to this case including administrative expenses and expenses related to parallel litigations which are burdensome to unrelated creditors. Monies from the estate are being used to pay professionals, not the creditors in this case. The local court is the most appropriate forum to address this two party dispute based on local law because of its expertise in family law, inheritance law and its familiarity with their case. Additionally, both Debtor and Candelario will benefit from hearing this case in the local court since, after thirteen years, it is definitely in a more advanced stage than our bankruptcy case which in turn depends on the local court case. Both Debtor and Candelario can move the local court accordingly with regards to the division and monthly payment since the case is on-going. The parties and this Court will benefit by limiting the possibility of contradictory rulings or outcomes and the resources of the Court are not drained by the continuous filings of motions, which will allow it to concentrate its efforts on cases that do serve a bankruptcy purpose. As a result, no party will lose any rights or be adversely affected by the dismissal.

*Id.* at *6.

In the alternative, the bankruptcy court dismissed the case under § 1112(b)(4)(E) and (P), determining that:

Section 1129(a)(14) of the Bankruptcy Code establishes as a necessary requirement for confirmation that the debtor be current in his post-petition DSO obligations. 11 U.S.C. § 1129(a)(14). By not curing all post-petition DSO pay-

ments, Debtor's plan is patently unconfirmable from its face. The Court granted Debtor one last opportunity to comply with the DSO order, which he flagrantly disregarded. As a result, the case must be dismissed pursuant to § 1112(b)(4)(E) or (P) because he has failed to comply with court orders and he is not current on monthly DSO payments. Debtor's actions leave this Court with no other option than to follow its statutory obligation to dismiss the case since there are no unusual circumstances to establish that dismissal under § 1112(b) is not in the best interest of all parties.

*Id.* at *7 (footnote omitted).

Rejecting Candelario's request that the case be converted to chapter 7 rather than dismissed, the bankruptcy court found that:

[D]ue to the procedural history of this case it is unlikely that the introduction of a trustee will do anything but add an additional party to this two party dispute. The appointment of an examiner did little but to increase the size of the docket and administrative expenses. Moreover, without the resolution of the state court case a Chapter 7 case would be just as stagnant as its Chapter 11 version. After many years of litigation in local court and understandably frustrated, Candelario would like to use this forum to accelerate the resolution of [t]his domestic dispute, but as explained this is not the proper forum.

*Id.* at *7 n. 19.

The bankruptcy court then issued a judgment dismissing the case.[8] These cross-appeals followed.[9]

---

**8.** The debtor moved for a stay pending appeal, which the bankruptcy court denied on June 5, 2014. *See In re Efron*, No. 11–2466(MCF), 2014 WL 2547798 (Bankr.D.P.R. June 5, 2014). Almost six months later, the

debtor filed an emergency motion for a stay pending appeal with the Panel, which it denied on December 5, 2014.

**9.** After examination of the briefs and other materials submitted in this matter, including

### JURISDICTION

█ The Panel may consider appeals from final orders. 28 U.S.C. § 158(a)(1). A bankruptcy court's decision to abstain from hearing a case pursuant to § 305(a) is a final order. *See GMAM Invs. Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 240 (S.D.N.Y.2004) (considering appeal from bankruptcy court's "final order" dismissing chapter 11 case pursuant to § 305(a)). Although § 305(c) imposes certain limitations on the appellate review available for abstention orders under § 305(a),[10] a bankruptcy court's order dismissing a case under § 305(a)(1) is subject to review by a bankruptcy appellate panel. *See Gelb v. U.S. Trustee (In re Gelb)*, BAP No. CC–12–1086–PaKiTa, 2013 WL 1296790, at *4 n. 13 (9th Cir. BAP Mar. 29, 2013); *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624 (9th Cir. BAP 1995) (stating § 305(c) "does not prohibit or restrict appeals to the Panel or the district court, but only further appeals to the circuit courts of appeal and the United States Supreme Court."); *AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re Ameri-CERT, Inc.)*, 360 B.R. 398, 403 (Bankr. D.N.H.2007) (stating "appellate review of abstention orders under [§ ] 305(a) is limited to the district court or the bankruptcy appellate panel. . . .").

█ A bankruptcy court's decision to dismiss a case under § 1112(b) is also a final order subject to review by the Panel.

*See In re Colón Martinez*, 472 B.R. 137, 143 (1st Cir. BAP 2012) (citations omitted).

Thus, the Panel has jurisdiction to hear this appeal.

### STANDARD OF REVIEW

█ A bankruptcy court's decision to dismiss a bankruptcy case pursuant to § 305(a) is generally reviewed for an abuse of discretion. *See In re Mazzocone*, 200 B.R. 568, 571–72 (E.D.Pa.1996) (citations omitted); *see also In re Sapphire Dev., LLC v. McKay*, 523 B.R. 1, 5 (D.Conn. 2014); *In re Hatfield*, No. C–07–3715 MMC, 2008 WL 906505, at *2 (N.D.Cal. Mar. 31, 2008); *Profutures Special Equity Fund, L.P. v. Spade (In re Spade)*, 269 B.R. 225, 227 (D.Colo.2001); *In re R & A Bus. Assocs., Inc.*, No. 99–2171, 1999 WL 820859, at *1 n. 1 (E.D.Pa. Oct. 14, 1999) ("If the matter is suitable for abstention, this court applies an abuse of discretion standard to review the bankruptcy court's decision to abstain.") (citation omitted); *but see In re Gelb*, 2013 WL 1296790, at *2 ("Whether the bankruptcy court should abstain and dismiss a bankruptcy petition under § 305(a) presents a mixed question of law and fact, reviewed *de novo*.") (citation omitted). "Any factual findings relied upon by the bankruptcy court in exercising its discretion are reviewed under a clearly erroneous standard and any legal conclusions relied upon by the bankruptcy court are subject to plenary review." *In re Mazzocone*, 200 B.R. at 572 (citations omitted).

---

the parties' requests for an expedited disposition of this appeal, the Panel determined that oral argument was not needed in this case because the facts and legal arguments were fully presented in the briefs and the voluminous record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr.P. 8019(b)(3); 1st Cir. BAP L.R. 8019–1(d).

10. *See* 11 U.S.C. § 305(c) (providing a bankruptcy court's order under § 305(a)(1) "is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28.").

When considering a bankruptcy court's decision to dismiss a case under § 1112(b), the Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Colón Martinez*, 472 B.R. at 143 (citing *Gilroy v. Ameriquest Mortg. Co. (In re Gilroy)*, BAP No. NH 07–054, 2008 WL 4531982, at *4 (1st Cir. BAP Aug. 4, 2008) (citations omitted)). The bankruptcy court, however, has "broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause." *In re Gilroy*, 2008 WL 4531982, at *4. Accordingly, the decision of the bankruptcy court on which relief to elect is reviewed for an abuse of discretion. "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 570 (1st Cir. BAP 2002) (citation omitted).

## DISCUSSION

### I. Abstention and Dismissal Pursuant to § 305(a)(1) [11]

#### A. Legal Standard

Pursuant to § 305(a), a bankruptcy court, after notice and a hearing, may dismiss all proceedings in a bankruptcy case if it determines the interests of creditors and the debtor would be better served by dismissal. *See* 11 U.S.C. § 305(a)(1). The issue of abstention under § 305 can be raised by the bankruptcy court sua sponte. *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D.Okla.2005); *see also In re Duratech Indus., Inc.*, 241 B.R. 283, 287 (E.D.N.Y. 1999). A bankruptcy court's decision to abstain under § 305(a) is discretionary and must be made on a case-by-case basis. *In re ELRS Loss Mitigation*, 325 B.R. at 634 n. 101. Although abstention in a properly filed bankruptcy case is an extraordinary remedy that should be used sparingly, dismissal is appropriate where the court finds both creditors and the debtor would be better served by dismissal than they would by the continuation of the case. *See, e.g., In re Kology*, No. 12–14992–WCH, 2013 WL 6331016, at *4 (Bankr.D.Mass. Dec. 5, 2013) (citing *In re Eastman*, 188 B.R. at 625); *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 46 (Bankr.D.P.R.2012); *In re Mazzocone*, 200 B.R. at 575.

Courts have considered a wide variety of factors to evaluate whether abstention is appropriate under § 305(a), including: (1) the purpose of the bankruptcy; (2) the necessity of federal proceedings to achieve a just and equitable solution; (3) the availability of another forum to resolve the unsettled issues; (4) the efficiency and economy of having the bankruptcy court settle the matter; (5) the possible prejudice to the various parties; and (6) whether the bankruptcy forum is being used to resolve what is in essence a two-party dispute. [12] *See, e.g., In re Seff Enters. & Holdings, LLC*, No. 09–13568–MWV, 2010 WL 7326760, at *2 (Bankr.D.N.H. Feb. 26,

---

**11.** The bankruptcy court noted that there are two statutory bases for abstention applicable in the bankruptcy context—305 and 28 U.S.C. § 1334(c). Under § 305(a), the court may dismiss a case or suspend *all* proceedings in a bankruptcy case. 28 U.S.C. § 1334(c) provides for abstention from particular proceedings in a bankruptcy case. The bankruptcy court determined that because there was no pending adversary proceeding before it— § 305 was the applicable abstention provision. Neither party challenges that determination.

**12.** Because bankruptcy court decisions under § 305(a) are not subject to appellate review by courts of appeal, *see* 11 U.S.C. § 305(c), there is no guidance from the First Circuit.

2010) (citing *In re Deacon Plastics Mach., Inc.*, 49 B.R. 982, 982 (Bankr.D.Mass. 1985); *In re Nesenkeag, Inc.*, 131 B.R. 246, 247 (Bankr.D.N.H.1991)); *In re Mazzocone*, 200 B.R. at 575; *In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr.D.R.I.1990). "[T]he exact factors to be considered and the weight to be given each of them is highly sensitive to the facts of each individual case." *In re Mazzocone*, 200 B.R. at 575 (citations omitted).

■■■ A significant factor in favor of dismissing a case pursuant to § 305(a)(1) is the absence of a true bankruptcy purpose, particularly where the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor. *See, e.g., In re Duratech Indus.*, 241 B.R. 291, 300 (Bankr.E.D.N.Y.1999) (dismissing bankruptcy case pursuant to § 305(a)(1) where debtor had pending business tort litigation against a creditor in state court and resolution of the bankruptcy depended entirely on the outcome of the state court proceeding); *Remex Elecs. Ltd. v. Axl Indus., Inc. (In re Axl Indus., Inc.)*, 127 B.R. 482, 484 (S.D.Fla.1991) ("Generally, a [bankruptcy] court should not take jurisdiction over a two-party dispute, unless special circumstances exist.") (citation omitted); *see also In re Spade*, 258 B.R. 221 (Bankr.D.Colo. 2001) (dismissing involuntary chapter 7 petition where bankruptcy was filed in response to a two-party dispute between debtor and a single creditor).

When faced with a case involving two-party domestic disputes that dominated the case, several bankruptcy courts abstained and dismissed the case. For example, one court abstained where it was "evident [that case was] not really a bona fide insolvency proceeding" and was "nothing but an extension and a rehash of a bitter domestic contest between feuding spouses, primarily centered around a property settlement[,] alimony and custody of the children, all matters which were ... properly before [other courts]." *In re Evans*, 8 B.R. 568, 572 (Bankr.M.D.Fla.1981). In *In re Danehy Dev. Corp.*, 27 B.R. 727, 728 (Bankr.S.D.Fla.1983), the bankruptcy court determined the primary purpose of the chapter 11 case was to hinder the ex-wife of the debtor's president in her efforts to collect alimony, and dismissed the case under § 305(a)(1). The court determined the interests of creditors and the debtor would be better served by dismissal because "no useful or beneficial purpose [wa]s likely to be achieved for the debtor" in the bankruptcy court, the debtor was "certain to bear a substantial expense the longer th[e] case last[ed]" and, it was "equally apparent that the creditors [we]re being delayed without any corresponding benefits." *Id.* In *Branham v. Davis (In re Branham)*, 149 B.R. 406, 409 (Bankr. W.D.Va.1992), the bankruptcy court abstained under § 305 where the debtor filed his chapter 7 case shortly after the state appellate court affirmed the state trial court's decision regarding divorce, support, maintenance, and property settlement. The court found the debtor's sole purpose for filing bankruptcy was to challenge the state court's decision which was reached after four years of litigation. *Id.* at 407. The court determined the matters should be resolved by the state court because virtually all issues arose out of domestic state court proceedings and any action sought by the debtor in the bankruptcy case was contrary to the state court decisions. *Id.* at 409.

Bankruptcy courts have also ruled in favor of abstention when the parties have access to a state court forum that has greater expertise than a bankruptcy court on the key issues impacting the bankruptcy case. *In re T.D.M.A., Inc.*, 66 B.R. 992, 995 (Bankr.E.D.Pa.1986) (concluding that bankruptcy courts should abstain when an-

other forum has a particular expertise which is relevant to the matters in dispute); *see also In re Mazzocone*, 183 B.R. 402, 421 (Bankr.E.D.Pa.1995) ("Because a bankruptcy court is often not the proper forum in which to adjudicate non-bankruptcy issues, litigation of such issues is frequently best left to the state courts and should not be imposed upon this specialty court unless necessary to resolve a bankruptcy-centered dispute.").

**B. Analysis**

Like these other courts, the bankruptcy court was persuaded that abstention and dismissal of the case was warranted under the circumstances, identifying several reasons for its decision. Key among them was the court's determination that the debtor's case did not serve a true bankruptcy purpose, and was essentially a two-party dispute between Candelario and the debtor over the division of their marital property that should be resolved in state court. The court found that until the disputes between the debtor and Candelario were resolved in the state court proceedings, the bankruptcy case could not move forward; the state court needed to make a clear determination of the assets belonging solely to the debtor for the benefit of his bankruptcy estate and those that were part of the marital estate of the debtor and Candelario requiring division between them. Only the state court could make this determination, the outcome of which greatly impacted any potential chapter 11 plan of reorganization and its confirmation. The bankruptcy court also noted that until the state court litigation was resolved, post-petition DSO payments would continue to accrue, rendering any reorganization plan proposed by the debtor unconfirmable.

Given this paramount issue, the bankruptcy court also determined that judicial economy would be better served by dismissing the bankruptcy case. It observed that the debtor and Candelario had spent excessive resources fighting in several forums, without yielding any positive results for the estate and debtor's creditors, and substantial estate funds were being used to pay professionals, not the creditors. The court emphasized that:

> [P]ursuing relief in bankruptcy court has guided the parties to a dead-end street. The fact that Debtor proposes a one hundred percent plan reflects that there is no real need for reorganization regarding any creditor other than Candelario. In the meantime, while Debtor and Candelario continue to bicker, all other creditors idly wait to collect on their claims.

*In re Efron,* 2014 WL 1572750, at *6.

Thus, the bankruptcy court determined abstention was the best course of action for the benefit of all parties involved in the bankruptcy case, including the creditors who would no longer have to take a back seat while the debtor and Candelario "incur ... vexatious and hostile litigation without collecting on their claims." *Id.* Dismissal would, the court concluded, benefit the debtor's creditors because any agreements reached with such creditors during the bankruptcy case would be unaffected by dismissal of the case given the lack of any major issues involving debtor's creditors other than Candelario, and in the event any such issues arose, those creditors could address them with the debtor outside of bankruptcy. Further, all parties, including the debtor and Candelario, would save unnecessary and duplicative costs related to parallel litigations which are burdensome to unrelated creditors and would also limit the possibility of contradictory rulings. Finally, the bankruptcy court noted that the state court, where the matters had progressed to an advanced

stage, was the most appropriate forum to address the overriding two-party domestic dispute because of its expertise in family and inheritance law, and its familiarity with the contested issues. In short, the bankruptcy court found that none of the parties in the case would in fact lose any rights or be adversely affected by dismissal of the bankruptcy case.

The debtor argues that the bankruptcy court abused its discretion in dismissing the case under § 305(a) because it: (1) did not hold an evidentiary hearing in violation of the debtor's due process rights; and (2) erred in finding the case was a two-party dispute that did not serve any bankruptcy purpose and could not move forward without resolution of the state court cases. Candelario also argues that dismissal was not in the best interest of creditors, the bankruptcy court erred in finding this was a two-party dispute with no true bankruptcy purpose, and the case should have been converted to chapter 7.

### 1. Lack of evidentiary hearing

■ Under § 305(a), a bankruptcy court may not dismiss a bankruptcy case until "after notice and a hearing." The bankruptcy court is not required, however, to hold a separate hearing on the issue of abstention "if the [c]ourt has conducted a hearing which allowed for the garnering of facts necessary to support the decision to abstain." *In re ELRS Loss Mitigation,* 325 B.R. at 634 (citing *Hurley v. Kujawa (In re Kujawa),* 224 B.R. 104, 107–08 (E.D.Mo.1998)); *see also In re Mazzocone,* 200 B.R. at 574. As the *Mazzocone* court stated:

It is true that under [§ ] 305(a) a bankruptcy court may not dismiss or suspend all proceedings in a bankruptcy case until "after notice and a hearing." But this is not a rigid requirement; the Bankruptcy Code defines the phrase "after notice and a hearing" to mean "after

such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Therefore, courts applying this definition have found that another evidentiary hearing may not be required when the relevant issues have already been argued at previous hearings. *See Sullivan Cent. Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.),* 935 F.2d 723, 727 (5th Cir.1991) ("Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings."); *Buffington v. First Serv. Corp.,* 672 F.2d 687, 690 (8th Cir.1982) (holding that if parties have an adequate opportunity to argue their interests then the hearing requirement of [§ ] 305(a) has been met).

200 B.R. at 575.

The debtor acknowledges an evidentiary hearing is not required when the relevant issues have already been argued at previous hearings, but contends that was not the case here. According to the debtor, the relevant issues were never previously argued, and the bankruptcy court abused its discretion by failing to hold a separate hearing on the abstention issue when it knew discovery was incomplete and the debtor was ready to present expert testimony and documentary evidence.

■ The record reflects the contrary. At the January 22, 2014 hearing, the bankruptcy court inquired about the bankruptcy purpose of the case and permitted extensive arguments by both the debtor and Candelario on the issue, as demonstrated by the 43–page hearing transcript. After hearing from the parties, the bankruptcy

court ordered the debtor to show cause why the court should not abstain from hearing the case as it appeared to be a two-party dispute over the division of marital property which served no bankruptcy purpose, thereby affording the debtor another opportunity to further address this issue in writing. The debtor and Candelario both filed extensive responses to the First Show Cause Order. The bankruptcy court then issued the Second Show Cause Order, directing the debtor to demonstrate why the case should not be dismissed due to his failure to pay monthly post-petition DSO payments pursuant to the DSO Order. This provided him with yet another opportunity to address the bankruptcy court's concerns, and the debtor did file a response to the Second Show Cause Order. All together, the debtor had at least three separate opportunities to address the issues of abstention and dismissal—at the January 22 hearing, in his response to the First Show Cause Order, and in his response to the Second Show Cause Order.

In light of the ample opportunities afforded the debtor to fully present his arguments, we find no fault with the bankruptcy court rendering its abstention and dismissal decision based on the parties' arguments and the sufficiently developed record. To require the bankruptcy court to hold another separate hearing under § 305(a) would "uselessly place form over substance." *In re Mazzocone*, 200 B.R. at 574.

### 2. Two-party dispute and absence of a true bankruptcy purpose

 The debtor takes issue with the bankruptcy court's characterization of his bankruptcy as a two-party dispute serving no bankruptcy purpose, and a case that was stymied without a resolution of the state court domestic dispute proceedings. According to the debtor, he filed his chapter 11 petition "due to the negative impact of Puerto Rico's sustained economic recession on his real estate holdings held through corporations and special partnerships whose debts are guaranteed by [him], as well his direct personal obligations." This, he contends, demonstrates the true bankruptcy purpose of the case. He points to the 27 other creditors in his case with scheduled claims totaling more than $61 million. He maintains that his plan of reorganization provided for an orderly disposition of assets and full payment of all allowed creditor claims, and included alternative treatments for Candelario's disputed claim. His controversies with Candelario, he asserts, do not render the chapter 11 case merely a two-party dispute, nor do they "negate his reorganizational needs."

The debtor fails to recognize, however, that although he did not agree with the bankruptcy court's holding in the DSO Order, he was required to comply with the order and make the DSO payments to Candelario, and his failure to do so prevented confirmation of his plan. Hence, the case could not progress and served no bankruptcy purpose. The debtor continues to rehash his arguments that he did not owe any monies to Candelario and the bankruptcy court erred in determining in the previously issued DSO Order that such payments qualify as domestic support obligations. But these conclusory assertions do not establish that the bankruptcy court erred in finding that the case essentially involved a two-party dispute that should be litigated in state court. Just because the debtor has more than one creditor does not, in itself, overcome the overriding nature of the bankruptcy case as a two-party dispute. And, as the bankruptcy court recognized, the debtor's proposal to pay his other creditors 100% of their claims through his plan revealed that there was no dispute with these creditors and no

genuine need for reorganization regarding any creditor other than Candelario.

Odd as it may seem, Candelario agrees with the debtor that the bankruptcy court erred in finding the case to be a two-party dispute with no true bankruptcy purpose. Conversion, not dismissal, she asserts, serves the best interests of creditor by enabling the bankruptcy court to supervise an orderly liquidation of the estate assets under chapter 7 and fulfill the bankruptcy purpose of payment to all of the debtor's numerous creditors, including herself. She also challenges the bankruptcy court's finding that the state court was the more appropriate forum, and that dismissal of the bankruptcy case would promote judicial efficiency and economy of administration. According to Candelario, at the time of the Dismissal Order, the state court had already issued a final judgment on the past-due DSO payments; the only pending issue was the determination of Candelario's share of the marital estate assets.

The bankruptcy court rejected Candelario's arguments, reasoning that they are based on "punitive motivations" rather than the best interest of all parties involved in the case. With a dismissal, the creditors and Candelario are able to pursue any actions against the debtor and pursue collection of any judgments in their favor. By concentrating resources and efforts in just one forum, the bankruptcy court concluded that judicial resources are no longer wasted, which ultimately benefits all creditors. And Candelario ignores

the fact that the bankruptcy case cannot proceed without an ultimate determination by the CFI of the division of the marital assets under Puerto Rico law.

We conclude that the bankruptcy court's findings amply support its decision that the interests of all creditors and the debtor are better served by dismissing the case pursuant to § 305(a). Neither the debtor nor Candelario have demonstrated that these findings were clearly erroneous or that dismissal was an abuse of discretion.

## II. Dismissal Pursuant to § 1112(b)(4)(E) and/or (P)

We turn now to the bankruptcy court's alternate grounds for dismissal of the case. Section 1112(b) provides that the bankruptcy court, after notice and a hearing, must convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if there is cause. It can only deviate from these two options if the court finds the existence of "unusual circumstances" as provided under § 1112(b)(2) and specifically identifies the reasons why dismissal or conversion would not be in the best interest of creditors and the estate.[13] *See* 11 U.S.C. § 1112(b).

In discussing this provision, the Panel has explained:

"BAPCPA limited the bankruptcy court's discretion to dismiss or convert a chapter 11 petition for cause by mandating conversion or dismissal if the movant establishes cause, unless the debtor

---

13. Section 1112(b)(2) provides:

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A). . . .

presents unusual circumstances, the debtor meets certain criteria justifying the act or omission and likelihood of confirming a plan, or the bankruptcy court finds that the appointment of a trustee is in the best interest of creditors." *In re Gilroy*, 2008 WL 4531982, at \*4 (citation omitted). In essence, § 1112(b)(1) "requires the bankruptcy court to make two determinations: (1) cause exists to convert or dismiss, and (2) which option is in the best interests of creditors and the estate." *In re Gollaher*, 2011 WL 6176074, at \*3 [ (10th Cir. BAP Dec. 13, 2011) ] (citations omitted); *see also In re Farnsworth*, 2009 WL 8466786, at \*6 [ (1st Cir. BAP Nov. 20, 2009) ].

*In re Colón Martinez*, 472 B.R. at 144.

■■■■■ The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case. Once cause is found, the burden shifts to the opposing party to demonstrate "unusual circumstances" that establish conversion or dismissal is not in the best interests of the creditors and the estate. The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. *See id.*; *In re Gilroy*, 2008 WL 4531982, at \*4. If there are no such unusual circumstances present, then the bankruptcy court must choose between dismissal or conversion, whichever is in the best interests of creditors and the estate.

**A. Cause**

■■■■ Section 1112(b)(4) provides a non-exhaustive list of examples that may constitute cause for dismissal of a chapter 11 case, including "failure to comply with an order of the court" and "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." *See* 11 U.S.C. § 1112(b)(4)(E) and (P). A court may order the conversion or dismissal of a chapter 11 case upon its own motion for the reasons specified in the statute. *See Steinman v. Spencer (In re Argus Grp. 1700, Inc.)*, 206 B.R. 737, 752 (Bankr. E.D.Pa.1996).

The bankruptcy court dismissed the debtor's case pursuant to § 1112(b)(4)(E) and/or (P) because he failed to comply with court orders and he was not current on monthly DSO payments, nor did his plan provide for payment of the DSO.[14] The debtor argues, however, that there was no cause for dismissal of his case under § 1112(b)(4)(E) or (P) because "at no time did the Bankruptcy Court issue[ ] an order directing [him] to make [DSO] payments. Consequently, [he] didn't violate any order to that effect. In any event, the DSO Order cannot give life to an inexistent [sic] obligation." Once again he protests that he had no obligation to commence making DSO Payments because the DSO Order was interlocutory.

These arguments are meritless. First, as already noted, on June 28, 2013, the bankruptcy court issued the DSO Order in which it determined the $50,000 monthly

---

**14.** In his second amended plan filed in January 2014, the debtor acknowledged the proofs of claim filed by Candelario, but asserted that her claims must be disallowed as he had paid any and all amounts "that could be owed to Ms. Candelario as to the conjugal property division," and, therefore, Candelario was "not to receive any payments under the Plan or otherwise." The plan further provided, "[a]ssuming in arguendo that Ms. Candelario would prevail as to [ ] her claims, she would be paid in full by the transfer thereto of Debtor's realty or that of entities in which Debtor has an interest as set forth in Exhibit C hereto." No Exhibit C was attached to the plan.

payment ordered by the CFI constituted a DSO as defined by § 101(14A). In his motion for a stay of the DSO Order pending appeal, the debtor admitted that unless the court stayed the DSO Order, he would be forced to commence monthly payments of $50,000. In its September 16, 2013 Order, the bankruptcy court denied the debtor's request for a stay and ordered the debtor to start making the DSO payments immediately.[15] Second, the interlocutory nature of an order has no bearing on its effectiveness and enforceability. Although the debtor clearly did not agree with the DSO Order or the subsequent orders compelling his compliance, that did not excuse his utter failure to comply with those orders. Absent a stay pending appeal, parties are obligated to comply with court orders, even if they are temporary or interlocutory, whether or not they agree with them. *See Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Acevedo–Garcia v. Vera–Monroig,* 368 F.3d 49, 58 (1st Cir.2004) ("It is well-settled that a party is not free to violate a court order simply because it believes (correctly or not) that the order is invalid."). The Supreme Court's admonitions on non-compliance with court orders aptly applies here:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'

*Maness v. Meyers,* 419 U.S. at 458–59, 95 S.Ct. 584 (citations omitted).

■■■ Without question and despite his objections, the debtor was nonetheless obligated to comply with the DSO Order and the subsequent orders directing him to commence the monthly DSO payments. His failure to do so constituted cause for dismissal or conversion under § 1112(b)(4)(E) and/or (P). The bankruptcy court's finding of cause for dismissal under these provisions was not clearly erroneous.

### B. Unusual Circumstances

Once the bankruptcy court found cause under § 1112(b), the burden shifted to the debtor to establish that "unusual circumstances" existed to avoid dismissal or conversion, and also demonstrate there was a reasonable likelihood a plan would be confirmed, there was "reasonable justification" to excuse the acts or omissions constituting cause and the same would be cured within such reasonable period of time as the court may direct. The record is devoid of evidence presented by the debtor establishing unusual circumstances. Rather, the record amply supports the bankruptcy court's conclusion that due to his unexcused failure to remit the DSO payments, the debtor's proposed plan was patently unconfirmable pursuant to

---

**15.** In its October 23, 2013 Order, the bankruptcy court clarified that its September 16, 2013 Order not only denied the debtor's request for a stay pending appeal but also granted Candelario's motion for reconsideration in which she asked the court to order the debtor "to immediately make the July 4, 2013, Support Payment to Candelario and all subsequent payments as they become due...."

§ 1129(a)(14).[16] The debtor failed to establish the criteria under § 1112(b)(2) that would potentially have avoided the mandated consequences under § 1112(b)(1) resulting from his noncompliance with the DSO Order and related orders requiring his compliance.

## C. Best Interests of Creditors

While applauding the bankruptcy court's finding of cause under § 1112(b) and the absence of unusual circumstances, once again Candelario takes issue with the dismissal of the case instead of its conversion.

The Bankruptcy Code does not define the phrase "best interests of creditors and the estate," but courts have typically considered the following factors to determine whether dismissal or conversion is in the best interest of creditors:

(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case

to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10)[ ] whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns. *In re Costa Bonita Beach Resort, Inc.,* 513 B.R. 184, 200–201 (Bankr.D.P.R.2014) (quoting Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy, at ¶ 1112.04[7] (16th ed. 2011)). "In essence, 'the court should evaluate and choose the alternative that would be most advantageous to the parties and the estate as a whole.' " *Id.* at 201 (citations omitted).

Candelario argues that the factors identified above weigh in favor of conversion rather than dismissal. However, the bankruptcy court found that the procedural history of this case made it "unlikely that the introduction of a trustee will do anything but add an additional party to this two party dispute," noting that the appointment of an examiner "did little but to increase the size of the docket and administrative expenses." *In re Efron,* 2014 WL 1572750, at *7 n. 19. Furthermore, the bankruptcy court reasoned that without the resolution of the state court cases, a chapter 7 case "would be just as stagnant as its [c]hapter 11 version." *Id.* Thus, although "Candelario would like to use this forum to accelerate the resolution of [the] domestic dispute," the bankruptcy court [wa]s simply "not the proper forum." *Id.*

In summary, there was clearly cause to dismiss or convert the case under § 1112(b)(1), and it was within the bankruptcy court's discretion to determine

---

16. Section 1129(a)(14) provides:

The court shall confirm a plan only if all of the following requirements are met ...

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debt-

or has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

11 U.S.C. § 1129(a)(14).

which option was in the best interest of creditors. Candelario has not demonstrated that the bankruptcy court's selection of the option of case dismissal was based upon an erroneous application of the law or a clearly erroneous finding of material fact such that it constituted an abuse of discretion.[17]

## CONCLUSION

The bankruptcy court's order and judgment dismissing the bankruptcy case are **AFFIRMED.**

17. During the pendency of this appeal, Candelario filed a Motion to Inform [of] Debtor's Failure to Pay the Examiner's Fees. In the motion, Candelario asserted that the examiner had filed a motion in bankruptcy court seeking an order against the debtor for payment of examiner's fees of over $77,000. According to Candelario, the issue of the examiner's unpaid fees is just one example of the many issues that were pending at the time of dismissal, and demonstrates that creditors are having difficulty collecting their debts outside of the bankruptcy. In response, the debtor filed a motion to quash Candelario's informative motion on the grounds that the issue of the examiner's fees is not part of this appeal. Although we recognize why this point was raised by Candelario, it is not a sufficient basis for us to conclude that the bankruptcy court's decision to dismiss rather than convert was an abuse of discretion.