**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. PR 20-014**

---

**Bankruptcy Case No. 19-01830-ESL**

---

**LA TRINIDAD ELDERLY LP SE,**
**Debtor.**

---

**LA TRINIDAD ELDERLY LP SE,**
**Appellant,**

**v.**

**LOÍZA PONCE HOLDINGS LLC,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge)**

---

**Before**
**Hoffman, Cary, and Panos,**
**United States Bankruptcy Appellate Panel Judges.**

---

**Wigberto Lugo Mender, Esq., on brief for Appellant.**
**Jorge Peirats, Esq., on brief for Appellee.**

---

**June 3, 2021**

---

**Panos, United States Bankruptcy Appellate Panel Judge.**

La Trinidad Elderly LP SE (the "Debtor") appeals from the bankruptcy court's order dismissing its chapter 11 petition and the order denying reconsideration. For the reasons below, we **AFFIRM** both orders.

## BACKGROUND[1]

To properly frame the issues that we have considered and decided in this appeal, it is necessary to recount in some detail the facts and travel of this case.

### I.     Pre-Bankruptcy Events

In 2005, FirstBank Puerto Rico ("FirstBank") loaned $5,000,000.00 (the "Loan") to Inmobiliaria La Trinidad, Inc. pursuant to a certain Credit Agreement and mortgage note in the original principal amount of $4,000,000.00. To secure its obligations with respect to the Loan, Inmobiliaria La Trinidad, Inc. granted FirstBank a first-priority mortgage (the "Mortgage") on real property in Ponce, Puerto Rico (the "Property"), a security interest in personal property, an assignment of rents, and other collateral. The Property is improved by a 130-unit apartment building which provides subsidized housing to eligible low-income elderly tenants pursuant to federal and local rental subsidy programs. In August 2010, the Debtor acquired the Property from Inmobiliaria La Trinidad, Inc. under a certain Deed of Sale and became the primary obligor on the Loan pursuant to an Assumption and Modification of Loan Agreement.

In August 2010, the Debtor also entered into a Subaward Agreement with the Puerto Rico Housing Finance Authority (the "PRHFA"), pursuant to which it received an approximate $14,500,000.00 grant to partially fund the development of the Property. The grant was for a

---

[1] All references to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. All references to "Rule" are to the Federal Rules of Civil Procedure, and all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

15-year term which expires in 2027. The Debtor was not required to repay the PRHFA grant unless there was a "recapture event" prior to the expiration of the term. In 2010, the Debtor also entered into a forbearance agreement with FirstBank, which subsequently sold the Loan to CPG/GS PR NPL, LLC ("CPG").

On November 1, 2012, CPG filed a complaint against the Debtor in the Puerto Rico Court of First Instance (the "local court"), seeking to collect monies due under the Loan and to foreclose the Mortgage (the "local court action"). In that action, the local court appointed Star Management Corporation ("Star Management") to administer the Property.

On May 27, 2016, the local court entered an order in favor of CPG authorizing the foreclosure of the Mortgage. Several months later, on October 28, 2016, CPG sold and assigned all of its rights, title, and interests in and to the Loan, the Mortgage, and other collateral to the appellee, Loíza Ponce Holdings LLC ("Loíza Ponce").[2] On the same date, Loíza Ponce and the Debtor executed a Forbearance and Settlement Agreement, whereby the Debtor acknowledged its indebtedness to Loíza Ponce, as well as its default under the Loan, in exchange for Loíza Ponce's forbearance from exercising its remedies under the Loan documents. Specifically, the Debtor admitted it owed Loíza Ponce the principal amount of $3,682,427.00, plus $2,554,205.91 in interest. Pursuant to that agreement, the Debtor and Loíza Ponce also entered into a Stipulation for the entry of judgment in the local court action. The local court entered judgment on November 17, 2016 (the "foreclosure judgment").

The Forbearance and Settlement Agreement expired by its terms on October 27, 2017. The Debtor failed to comply with the terms of that agreement and negotiations to extend it were unsuccessful.

---

[2] For the sake of consistency, throughout this opinion, all quotes from documents in the record referring to the name "Loiza Ponce" have been changed to "Loíza Ponce."

On June 11, 2018, Loíza Ponce obtained an Order of Execution of Judgment and a corresponding Writ of Execution. The public auction to sell the Property was scheduled for September 26, 2018.

## II.   The First Bankruptcy Filing

On September 25, 2018, the day before the auction, the Debtor filed a chapter 11 bankruptcy petition (the "first petition"). Loíza Ponce sought to dismiss the first petition, alleging it was filed in bad faith. After conducting a three-day evidentiary hearing between November 2018 and January 2019 (the "Prior Case Hearings"), the bankruptcy court dismissed the first petition on January 29, 2019, on the grounds that it was not filed by an authorized partner or agent.

## III.   The Second Bankruptcy Filing

### A.   The Petition

Following the dismissal of the first petition, Loíza Ponce renewed its request for execution of the local court judgment, and a public sale was scheduled for April 3, 2019. On the day before the public sale, the Debtor filed a second petition for chapter 11 relief (the "current case").

On its Schedule A/B, the Debtor listed assets totaling approximately $4.8 million, including: the Property (valued at $3.5 million); accounts receivable ($63,000.00); inventory ($4,500.00); furniture ($17,600.00); machinery, fixtures, and equipment ($189,000.00); a $531,000.00 claim against Loíza Ponce; a contingent and unliquidated insurance claim in the amount of $30,000.00 for hurricane damage; sums held in four operating accounts maintained by Star Management totaling approximately $249,000.00; and an operating reserve held by PRHFA in the approximate amount of $214,000.00. The Debtor's Schedule D indicated that, in addition

4

to Loíza Ponce, its only other secured creditor was "Aut para el Financiamiento de Vivienda," with a $14.5 million claim. On Schedule E/F, the Debtor listed unsecured claims totaling approximately $946,000.00. The largest among those was Alpha Capital Solution LLC's claim for $664,779.00 (which the Debtor later amended to $864,779.00). On Schedule E/F, the Debtor also listed: a $364.08 claim in favor of CRIM for property taxes; a $15,658.84 claim owed to the Internal Revenue Service; a $4,282.44 claim owed to the Puerto Rico Treasury Department; a $3,566.68 claim in favor of State Insurance Fund Corporation for employment insurance; a $130,000.00 claim in favor of Affordable Housing Living Inc., representing a "management fee"; and a $127,688.20 claim, representing a judgment debt. In its Statement of Financial Affairs, the Debtor listed the local court action and indicated its status as "concluded."

### B.    The Motion to Dismiss

On April 13, 2019, Loíza Ponce filed a motion to dismiss the Debtor's petition on the grounds it was filed in bad faith and there was no reasonable likelihood of rehabilitation. In support, Loíza Ponce cited In re Plaza Antillana Inc., No. 13-10013 (ESL), 2014 WL 585299, at *7 (Bankr. D.P.R. Feb. 14, 2014), for the proposition that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" for dismissal under § 1112(b)(1). Citing Phoenix-Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix-Piccadilly, Ltd.), 849 F.2d 1393 (11th Cir. 1988), Loíza Ponce argued that all six criteria identified in that case for establishing a "bad faith" filing were present and requested dismissal of the current case.

### C.    The Debtor's Objection to the Motion to Dismiss

The Debtor filed an opposition to the Motion to Dismiss, arguing there was no cause for dismissal. The Debtor challenged the validity of the Forbearance and Settlement Agreement,

asserting the agreement was "void *ab initio*" because it was entered into in violation of the Debtor's partnership agreement.

The Debtor also disputed Loíza Ponce's assertion that filing for bankruptcy in "the midst of a foreclosure" was an "abuse of the bankruptcy process." In support, the Debtor cited Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner), 490 F.3d 21, 25 (1st Cir. 2007), wherein the First Circuit stated that "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." (citation omitted). The Debtor also contended that the dismissal of the current case would be detrimental not only to its estate and creditors, but also to "the elderly population in the community of Ponce." It explained that the foreclosure of the Property, which was likely to follow a dismissal of the current case, could result in the loss of rental assistance subsidies from the Puerto Rico Department of Housing and the acceleration of other obligations. Finally, the Debtor disputed the amount it owed to Loíza Ponce, asserting that the estate held "valid claims" against Loíza Ponce which had yet to be asserted in an adversary proceeding. Insisting it was "in compliance with its duties as a debtor," the Debtor urged the court to deny the Motion to Dismiss.

Thereafter, the parties agreed to submit the Motion to Dismiss on the evidence presented during the Prior Case Hearings. As ordered by the bankruptcy court, the parties filed proposed findings of fact based upon the evidence that was presented at those hearings.

**D.      The Plan of Reorganization, Disclosure Statement, and Objection Thereto**

On July 1, 2019, the Debtor filed its Disclosure Statement and Plan of Reorganization (the "Plan"), both of which presented two scenarios for reorganization and treated Loíza Ponce

6

as a Class 5, unsecured creditor with a disputed claim. In the Disclosure Statement, the Debtor explained that it had appealed the foreclosure judgment and that the appeal remained pending.[3] The Plan contemplated the filing of an adversary proceeding against Loíza Ponce or an objection to Loíza Ponce's claim, and provided that any potential dividend to Loíza Ponce would be paid "only after the entry of final judgment" in the to-be-filed adversary proceeding or contested matter.

Scenario 1 under the Plan contemplated a sale of the Property "to a qualified operator subject to the liens and restrictive covenants imposed by the [PRHFA]." Under this scenario, Loíza Ponce would receive "a lump sum payment in [an] amount to be determined from the net gross proceeds" of the sale of the Property. Alternatively, Scenario 2 contemplated the Debtor's continued operation of the Property "until expiration of the term of the subaward agreement in 2027." Under this scenario, Loíza Ponce would "receive a payment . . . of no more than $3,682,427" to be distributed during the life of the Plan as provided therein.

On August 16, 2019, Loíza Ponce filed a motion acknowledging that the claims bar date had passed and asking the court to construe the Motion to Dismiss as an "informal proof of claim" in the principal amount of $5,862,334, plus interest. Absent any objection, the court granted the motion.

---

[3] In fact, the record reflects that the Debtor had filed a motion for relief from the foreclosure judgment in the local court, alleging that the Forbearance and Settlement Agreement was void. After that motion was denied, the Debtor filed a petition for certiorari in the Court of Appeals of Puerto Rico, alleging the motion for relief from judgment was improperly denied. After the petition for certiorari was denied, the Debtor filed a motion for reconsideration, which motion was denied on June 21, 2019. On July 24, 2019, the Debtor filed a petition for certiorari in the Supreme Court of Puerto Rico, arguing that the lower courts erred in declining to consider the alleged "nullity" of the Forbearance and Settlement Agreement. As discussed infra, the Supreme Court of Puerto Rico denied the petition for certiorari.

On September 3, 2019, Loíza Ponce filed an objection to the Debtor's Disclosure Statement, arguing it failed to provide adequate information with respect to "several material aspects of the proposed Plan" and the Plan was "patently unconfirmable." Noting that the Disclosure Statement described two alternatives set out in the Plan for the possible reorganization of the Debtor, Loíza Ponce asserted that both were flawed. As for Scenario 1—a projected sale of the Debtor's business—Loíza Ponce argued that the Debtor provided "no support whatsoever for the projected net proceeds of . . . $3,350,000." Loíza Ponce complained that the Disclosure Statement failed to indicate how the Debtor would fund Scenario 2, which contemplated the Debtor's continued operation of the Property and adequate protection payments to Loíza Ponce. Finally, Loíza Ponce argued that the Plan was unconfirmable because it disregarded Loíza Ponce's secured status. Loíza Ponce concluded by urging the court not to consider the adequacy of the Disclosure Statement until it had resolved the pending Motion to Dismiss.

### E. The Dismissal Order

The bankruptcy court scheduled a hearing on the Disclosure Statement and Plan for September 17, 2019. Four days before the hearing, on September 13, 2019, the bankruptcy court entered an Opinion and Order granting the Motion to Dismiss (the "Dismissal Order"). See In re La Trinidad Elderly LP SE, No. 19-01830 (ESL), 2019 WL 4410547 (Bankr. D.P.R. Sept. 13, 2019). The court made numerous findings, including the following, most of which the Debtor would subsequently challenge:

> 6. On September 22, 2015, as part of the proceedings in the Ponce Mortgage Foreclosure Case, the Court of First Instance, Ponce Section, appointed Star Management Corporation as judicial administrator of Debtor's business . . . . Star Management Corporation continues to administer the Property.
> . . . .

8

9. On October 28, 2016, Loíza Ponce and Debtor executed a Forbearance and Settlement Agreement whereby Debtor acknowledged its indebtedness to Loíza Ponce . . . .

. . . .

11. [T]he Court of First Instance, Ponce Section, entered Judgment on November 17, 2016, which Judgment is now final and unappealable.

12. Commencing on October 26, 2016, Star Management Corporation forwarded the receipts of the rents of the Property, less its management fee and operation expenses to Loíza Ponce.

. . . .

21. Debtor's assets are the real property, a lot with a building with 130 subsidized rental units valued at $3,500,000.00, and the inventory, furniture, equipment, accounts receivable, and operational accounts related to the operation of said real property.

22. Loíza Ponce is a secured creditor and has a claim over Debtor's property which amounts to $5,862,334, as of January 24, 2019, interest accruing at the per diem rate of $946.18.

23. Debtor also lists as secured debts taxes owed to the Municipal Revenue Collection Center ("CRIM", in Spanish) and a second mortgage granted [to] PRHFA in the amount of $14,565,340.00.

24. Debtor has no employees.

25. Debtor is not receiving income, as the receipts of the rents of the Property, less Star Management Corporation's management fees and operation expenses were forwarded to Loíza Ponce and are now deposited in Star Management's Operational bank account.

Id. at *3-5.

The court ruled that lack of good faith may be grounds for dismissal, although it acknowledged that the First Circuit has not yet decided the issue. Id. at *7. In support of its ruling, the court noted its own precedent, In re Costa Bonita Beach Resort Inc., 479 B.R. 14 (Bankr. D.P.R. 2012), as well as cases from the Eleventh, Sixth, Fifth, Fourth, and Third Circuits. Id. at *7. Rejecting a "mechanical checklist approach" to the determination of good faith, id. at *6, the court stressed that the determination is a fact intensive inquiry requiring analysis of the totality of the circumstances. Id. at *7.

9

In this case, the court stated, "the key factors" were:

the timing of the bankruptcy petition, the litigation between the Debtor and Loíza Ponce, the nature and extent of the secured claim held by Loíza Ponce, the value of the property, the payment under the chapter 11 plan of Loíza Ponce's claim, and the likelihood of rehabilitation pursuant to the terms of the confirmed plan.

Id. at *8.  Against the backdrop of these considerations, the court further stated:

Distribution to Loíza Ponce under the proposed chapter 11 plan hinges on a final determination of an adversary proceeding challenging the nature of the claim and an objection to claim opposing the amounts claimed by [Loíza Ponce] as secured.  The Debtor has not filed an adversary proceeding against Loíza Ponce nor an objection to its proof of claim.  Consequently, the secured proof of claim filed by Loíza Ponce is deemed allowed.  11 U.S.C. § 502(a).  Moreover, the claim is based on a final judgment in a state court action, which this court may not revisit under the Rooker Feldman doctrine.

The undisputed value of the real property which is subject to Loíza Ponce's lien is $3,500,000.00.  Therefore, Loíza Ponce is an under secured creditor.

The holders of the lien over the Debtor's real property, CPG/GS PR NPL LLC and now Loíza Ponce[,] have tried to collect on the amounts owed by the Debtor and foreclose the real property since November 1, 2012.  The state court has entered a final judgment in favor of the plaintiff secured creditor, has issued execution orders, writs of execution, and has scheduled a public sale for September 26, 2018 and April 3, 2019.  The Debtor filed the first chapter 11 petition on September 25, 2018 and the current petition on April 2, 2019, that is the day before each of the dates for which the public sale of the property was scheduled.

The Debtor is not making current payments to the secured creditor and is presumptively reserving the amounts in its bank account.  The repayment terms proffered in the chapter 11 plan are not clear and premised on [a] weak legal basis.  Thus, any positive cash balance in the monthly reports of operations must be adjusted to conform to this reality.

The court notes that the Debtor does not have employees and is operated by a state court ordered judicial administrator, Star Management Corporation.

After considering the above facts in light of the applicable law, the court finds that the instant bankruptcy petition was filed solely for the purpose of forestalling the imminent public sale of its real property.  The court further finds that the Debtor has not shown a likelihood to have a chapter 11 plan within a reasonable time in view of its treatment of the secured claim held by Loíza Ponce.

10

> Therefore, the court concludes that the petition was not filed in good faith, that is, for a valid bankruptcy purpose.

Id. at *9-10.  Based on the foregoing, the court granted the Motion to Dismiss.  Id. at *10.

### F.        The Motion for Reconsideration

Fourteen days later, on September 27, 2019, the Debtor filed a motion for reconsideration under Rule 59(e) (the "Reconsideration Motion"), arguing the court "wrongly concluded that the petition was not filed in good faith."  The Debtor specifically challenged five findings of fact.

First, the Debtor pointed to fact no. 6, where the bankruptcy court found that the local court had appointed Star Management.  According to the Debtor, Star Management was not a judicial administrator but, rather, had been retained by the Debtor.  Second, the Debtor challenged fact no. 9—that Loíza Ponce and the Debtor executed a Forbearance and Settlement Agreement whereby the Debtor acknowledged its indebtedness to Loíza Ponce.  The Debtor maintained that the agreement was unauthorized.  Third, the Debtor disputed fact no. 11, where the court stated that the foreclosure judgment was "final and unappealable."  The Debtor claimed that the issue of the validity of the foreclosure judgment was pending before the Supreme Court of Puerto Rico and, therefore, the judgment was not final.  The Debtor challenged fact no. 12, where the court stated that Star Management was forwarding the rents to Loíza Ponce, minus its management fee and operation expenses.  Characterizing that fact as "incomplete and/or incorrect," the Debtor insisted: "Loíza Ponce ha[d] no right to withdraw any rent proceeds from Debtor's operating accounts."  The Debtor disputed the accuracy of fact no. 22, where the court found that Loíza Ponce was a secured creditor with a claim of $5,862,334 as of January 24, 2019.  Finally, the Debtor challenged fact no. 25, wherein the court stated that the Debtor was not receiving any income.  The Debtor countered that it was the only entity allowed to receive

11

rental income, adding that its operating accounts, as reflected in the Monthly Operating Reports, showed a cash balance of $422,187.00 as of July 31, 2019.

In addition, the Debtor challenged several of the court's legal conclusions. First, the Debtor disputed the court's conclusion that the Debtor was, in effect, seeking relief from the foreclosure judgment in violation of the Rooker-Feldman doctrine. Instead, the Debtor highlighted that it had appealed that judgment to the Supreme Court of Puerto Rico. Second, the Debtor argued that the court prematurely ruled that Loíza Ponce's proof of claim was valid, particularly given the late filing of that proof of claim. Third, the Debtor challenged the court's characterization of the repayment terms proffered in the chapter 11 plan as "[un]clear" and "weak." The Debtor suggested that this conclusion, too, was premature, as the only objection to the Disclosure Statement was filed by Loíza Ponce and the Debtor had intended to address that objection at the hearing on confirmation scheduled for September 17, 2019. Finally, the Debtor defended its failure to make current payments to Loíza Ponce, arguing that Loíza Ponce had "no right to collect any payments . . . from the funds existing in the operating bank accounts." The Debtor also represented that it "remain[ed] in search of" alternatives to fund the Plan. Based on the foregoing, the Debtor asserted that Loíza Ponce had failed to establish cause for dismissal and that the court had committed a manifest error of law when it dismissed the case.

After the filing of the Reconsideration Motion, on October 11, 2019, the Supreme Court of Puerto Rico denied the Debtor's petition for certiorari, thereby rendering the foreclosure judgment final.

## G. The Objection to the Reconsideration Motion

Loíza Ponce filed an objection to the Reconsideration Motion (the "Objection to Reconsideration Motion"), arguing the Debtor failed to establish a manifest error of law or fact.

Loíza Ponce accused the Debtor of "play[ing] with semantics" in claiming that the court erred in six of its factual findings. In defense of fact no. 6, regarding Star Management, Loíza Ponce asserted:

> The Court did not say that it continues to administer the Property as a **judicial** administrator, just that it continues to administer it. . . . [T]he reality is that Star continues to administer the Property under the same terms as it was originally agreed as a judicial administrator.

With respect to the Debtor's assertion that the foreclosure judgment was not final, Loíza Ponce countered:

> What is currently pending before the Supreme Court of Puerto Rico is a petition for *certiorari* of the Court of Appeals' refusal to issue a *certiorari* of the Court of First Instance's denial of Debtor's motion for relief [from] judgment. This twice denied request for relief from judgment does not make the Judgment entered any less final or unappealable. In fact, as both the Court of First Instance and the Court of Appeals have held, the motion for relief [from] judgment is untimely, having been filed after the 6 month[ ] deadline . . . .

With respect to the remaining findings of fact which the Debtor challenged in the Reconsideration Motion, Loíza Ponce argued the Debtor never claimed error, but only that the facts were "incomplete or misstated." Additionally, Loíza Ponce defended its secured status, arguing that it "purchased Debtor's original loan and its collateral." Loíza Ponce further asserted that the Debtor's challenge to its secured status was "untimely" as the court had deemed the Motion to Dismiss as an "informal proof of claim." Finally, Loíza Ponce contended that the court correctly found that it was entitled to receive the Property's rental income, stating:

> [T]he fact remains that Loíza Ponce received the rental income, minus Star's fees and project expenses, commencing with Star's appointment as judicial administrator, as per the Forbearance and Settlement Agreement and Consent Judgment, until the filing of the first Chapter 11 petition in 2018, when Star ceased to forward them to Loíza Ponce. As the Court correctly found, Star has deposited the rental income since then in its Operational Account and has refused Debtor's instructions to forward the income to Debtor.

13

Emphasizing that the Plan proposed to pay unsecured creditors while its own, secured claim was impaired, Loíza Ponce argued that the court correctly concluded the Plan was "premised on a weak [legal] basis." For these reasons, Loíza Ponce asked the court to deny the Reconsideration Motion.

### H.     The Supplemental Submissions

On October 16, 2019, Loíza Ponce filed a supplement to its Objection to Reconsideration Motion to inform the bankruptcy court that the Supreme Court of Puerto Rico had denied the Debtor's petition for certiorari. The Debtor, likewise, filed a supplement to the Reconsideration Motion, conceding, in light of the Supreme Court of Puerto Rico's denial of the Debtor's petition for certiorari, that the foreclosure judgment was "now final and unappealable" and that the bankruptcy court's finding of fact no. 6 was "now correct." The Debtor added: "[I]f afforded some additional time to now entertain a prospective purchaser, reasonable means for funding the [P]lan may be identified . . . with the transfer of this property as a going concern benefitting all creditors . . . ."

After the Supreme Court of Puerto Rico denied the Debtor's petition for certiorari, in November 2019, Loíza Ponce "assigned its rights" under that judgment to SF IV La Trinidad, LLC.[4] Thereafter, while the Reconsideration Motion was pending, the Property was sold through public auction for $4,000,000.00 to SF IV La Trinidad, LLC. The Debtor, therefore, filed a second supplement to the Reconsideration Motion (the "Second Supplement"), reporting that the auction of the Property occurred on November 19, 2019, but intimating that the sale was

---

[4] There is no documentary evidence of the terms of this assignment in the record. It is unclear why SF IV La Trinidad, LLC was not named as the appellee in this appeal, but no party has objected to Loíza Ponce's participation in this appeal.

not yet final as it had not been confirmed by the local court. Further, despite the sale, the Debtor insisted that it still intended to reorganize, stating it had remaining assets.

Loíza Ponce opposed the Second Supplement as "vague and unsupported," complaining that the Debtor failed to identify with specificity the resources it intended to use to reorganize in the absence of the Property.

## I.      The Order Denying the Reconsideration Motion

On March 20, 2020, the bankruptcy court entered an Opinion and Order denying the Reconsideration Motion (the "Order Denying Reconsideration"). See In re La Trinidad Elderly LP SE, No. 19-01830 (ESL), 2020 WL 1456496 (Bankr. D.P.R. Mar. 20, 2020). Treating the Reconsideration Motion as one under Rule 59(e), as it was filed within 14 days of the entry of the Dismissal Order, id. at *2, the court offered the following rationale for its decision:

> [T]he facts relied [upon] by the court in its dismissal order were, as agreed by the parties, based on the evidentiary hearing held in the 2018 petition, as summarized in the proposed findings of fact which both the Debtor and Loíza Ponce submitted to the court.
>
> After considering the sequence of events summarized above and the motions filed by the parties in relation to the motion for reconsideration, the court determines that the findings of fact in the dismissal order, as well as it[s] legal analysis, are not clearly erroneous and there is no manifest error of law. The court agrees with Loíza Ponce's conclusion that the factual errors alleged by Debtor are not correct and that, in any event they are "immaterial and inconsequential." Thus, the court does find that its legal analysis was not flawed considering the findings of fact in the dismissal order.

Id. at *3. The Order Denying Reconsideration was silent regarding the foreclosure of the Property reported in the Second Supplement.

This appeal followed.

**I.    The Debtor**

The Debtor asserts that the bankruptcy court erred in concluding that the current case should be dismissed because it was filed in bad faith and there was no likelihood of rehabilitation.  According to the Debtor, Loíza Ponce failed to prove that the Debtor continued to experience a negative cash flow or that there was no reasonable likelihood the Debtor would be able to stem its losses within a reasonable time as required under § 1112(b)(4)(A).  Moreover, the Debtor maintains that Loíza Ponce's only argument was simply that the Debtor was a "SARE [(single asset real estate debtor)]," and filed the current case to forestall foreclosure.  The Debtor argues that potential detriment to the elderly community of southern Puerto Rico in the event of foreclosure qualified as an unusual circumstance which should have precluded dismissal, but fails to address the fact that the foreclosure had already occurred during the pendency of the Reconsideration Motion.

The Debtor highlights that there was no showing of misconduct and that it was prepared to address any Plan objections at the September 17, 2019 hearing.  Under these circumstances, the Debtor argues, dismissal prior to the hearing was premature.  Despite the foreclosure of the Property, the Debtor contends that it could proceed with the reorganization process, explaining that it has other remaining assets, including inventory, furniture, equipment, accounts receivable, and operating accounts.

**II.    Loíza Ponce**

Acknowledging that the First Circuit has yet to decide whether lack of good faith constitutes cause to dismiss under § 1112(b), Loíza Ponce notes that "most courts that have dealt

with the issue, including bankruptcy courts within this Circuit, hold that it does." Loíza Ponce

maintains that the Debtor "fails to identify any present need for bankruptcy":

> [The Debtor's] only assets were the Property, the inventory inside it, and the accounts related to the operation of the Property. At the time of filing, the Property was encumbered with liens which were the subject of a final state court judgment ordering foreclosure. The Property has now been foreclosed, in satisfaction of that debt. Aside from the mortgage on the Property, [the Debtor] had no other significant debts, and, in any event, they were all related to the now-sold Property. Specifically, the only other creditors that [the Debtor] claims to have are the PRHFA and tax authorities, both in relation to the Property. The [Debtor] did not and has not identified any other value for its assets that was threatened outside of bankruptcy but could be preserved or maximized in a reorganization or liquidation.

Without an identifiable bankruptcy purpose, Loíza Ponce contends, the Debtor's petition cannot

constitute a good faith filing.

Further, Loíza Ponce argues that even if bad faith does not constitute cause, the

diminution in value of the Debtor's bankruptcy estate amounted to cause. It explains:

> While the bankruptcy court did not specifically utter the words "diminution in value," it made specific factual findings based on the record that support such holding. The bankruptcy court found that [the Debtor's] only assets were the Property, "a lot with a building with 130 subsidized rental units valued at $3,500,000.00, and the inventory, furniture, equipment, accounts receivable, and operational accounts related to the operation of said real property." The court further noted that [the Debtor] owed a debt to [Loíza Ponce] of $5,862,334 secured by the Property with interest accruing at the per diem rate of $946.18. Additionally, the court found that [the Debtor] was not paying its mortgage obligation. Moreover, the court noted that the [Debtor] was not receiving income. Thus, the court found that "any positive cash balance in the monthly reports of operations must be adjusted to conform to this reality."

In light of the foregoing, Loíza Ponce maintains that the record shows that the Debtor's

bankruptcy estate was diminishing in value.

As for the Debtor's reorganization prospects, Loíza Ponce argues that the Debtor failed to

point to any concrete funding alternatives and its "speculative" alternative for funding the Plan

was not enough to render it confirmable. With respect to the "unusual circumstances" issue,

17

Loíza Ponce asserts that the Debtor's argument that a foreclosure would affect tenants was also speculative and adds that, since the foreclosure, "Star Management has continued to manage the Property and the tenants have not been affected in any way."

Moreover, Loíza Ponce maintains that the bankruptcy court did not abuse its discretion by dismissing, rather than converting, the petition as the Debtor has never argued that conversion, rather than dismissal, was in the best interests of creditors and the estate. Loíza Ponce counters the Debtor's argument that the bankruptcy court dismissed its case prematurely by highlighting that the court had already held three days of evidentiary hearings in connection with the motion to dismiss the first petition and the parties therefore agreed to submit the motion to dismiss the second petition on the evidence presented at those hearings.

Loíza Ponce rejects the Debtor's argument that the bankruptcy court should have granted reconsideration "because the factual finding that Star Management was a judicially appointed administrator was wrong." First, Loíza Ponce claims that the Debtor mischaracterizes the court's finding, and states the court merely said that Star Management "continues to administer the Property." In the alternative, Loíza Ponce argues that this finding was immaterial, even if incorrect.

## JURISDICTION

Before addressing the merits of an appeal, we must determine whether we have jurisdiction, even if the question is not raised by the litigants. Formatech, Inc. v. Sovereign Bank (In re Formatech, Inc.), 483 B.R. 363, 367 (B.A.P. 1st Cir. 2012) (citation omitted). We have jurisdiction to hear appeals from final orders. See 28 U.S.C. § 158(a), (c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank,

18

135 S. Ct. 1686, 1692 (2015).  A bankruptcy court order dismissing a chapter 11 petition is a final order.  Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 170 (B.A.P. 1st Cir. 2016) (citing In re Colón Martinez, 472 B.R. 137, 143 (B.A.P. 1st Cir. 2012)).  We have previously ruled that an order denying reconsideration is also a final order "if the underlying order was final and the two orders end the litigation on the merits." Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 495 (B.A.P. 1st Cir. 2016) (citation omitted).  Applying these standards here, both the Dismissal Order and the Order Denying Reconsideration are final.

**EQUITABLE MOOTNESS**

## I.       Summary of the Law

The jurisdictional issue of finality is not the only relevant consideration in determining whether we should reach the merits of an appeal.  Mootness—which encompasses both equitable and jurisdictional considerations, United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 983 F.3d 69, 72 (1st Cir. 2020)—is another factor we must take into account.  See Melo v. GMAC Mortg., LLC (In re Melo), 496 B.R. 253, 256 (B.A.P. 1st Cir. 2013) (stating mootness "will deprive us of jurisdiction to review a final order") (citation omitted).  "[B]ecause mootness is a threshold issue, we may determine it sua sponte."  Richmond v. Sovereign Bank (In re Formatech, Inc.), BAP No. MW 12-013, 2013 WL 87406, at *1 (B.A.P. 1st Cir. Jan. 8, 2013) (citation omitted).

Equitable mootness, implicated here, "concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to 'unscramble the eggs.'" Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966,

968 (9th Cir. 2016) (citation omitted).[5]  "The doctrine . . . is 'rooted in the court's discretion in matters of remedy and judicial administration' not to determine a case on its merits."[6]  In re López-Muñoz, 983 F.3d at 72 (quoting PPUC Pa. Pub. Util. Comm'n v. Gangi, 874 F.3d 33, 37 (1st Cir. 2017)) (some internal quotation marks omitted).  We must consider whether we should decline to hear this appeal on equitable mootness grounds because of the foreclosure sale that occurred following the unstayed Dismissal Order.

The "diligence requirement has been described as a 'chief consideration'" in equitable mootness determinations.  GLM DFW, Inc. v. Windstream Holdings, Inc. (In re Windstream Holdings, Inc.), 838 F. App'x 634, 637 (2d Cir. 2021) (citations omitted).  Courts instruct that when a party does not diligently pursue a stay or seek expedited appellate review, "the question is not solely whether we *can* provide relief . . . , but also whether we *should* provide such relief in light of fairness concerns."  Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 145 (2d Cir. 2005) (citations omitted).  "The 'equitable' mootness test inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible."  Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 48 (1st Cir. 1998) (citation omitted).  As one court of appeals explained:

---

[5]  In bankruptcy matters, there are two other forms of mootness: constitutional and statutory.  See In re Castaic Partners II, LLC, 823 F.3d at 968.

[6]  Regarded as controversial by some courts, the doctrine of equitable mootness has come under scrutiny.  See, e.g., New Indus., Inc. v. Byman (In re Sneed Shipbuilding, Inc.), 916 F.3d 405, 408-09 (5th Cir. 2019); In re One2One Commc'ns, LLC, 805 F.3d 428, 445-46 (3d Cir. 2015) (Krause, J., concurring); In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994).  In the First Circuit, however, the doctrine remains viable.  See Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 987 F.3d 173, 181-82 (1st Cir. 2021).

> Some controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court. This is particularly true when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones.

Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002) (citation omitted). "[E]quitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Id. (emphasis omitted). For this reason, "[t]he doctrine might better be viewed as akin to equitable laches, the notion that the passage of time and inaction by a party can render relief inequitable." In re Fin. Oversight & Mgmt. Bd. for P.R., 987 F.3d at 181 (citation omitted).

"[C]onsiderations underlying the mootness doctrine . . . 'pervade the Bankruptcy Code[.]'" Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 472 (1st Cir. 1992) (citation omitted). Consequently, courts have employed equitable mootness principles "'in a range of contexts,' including appeals involving all manner of bankruptcy court orders." In re Windstream Holdings, Inc., 838 F. App'x at 637 (citing Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.), 772 F.3d 102, 109 & n.12 (2d Cir. 2014)). Significantly, a number of courts have ruled that where, as here, the appellant failed to obtain a stay of an order dismissing a chapter 11 petition, the appeal of the dismissal order became moot following the foreclosure of the subject property. See, e.g., Heardway Dev. v. Sunrise Bank of Cal. (In re Heardway Dev.), No. 91-15279, 1993 WL 59337, at *1 (9th Cir. Mar. 5, 1993); Squires Motel, LLC v. Gance, 426 B.R. 29, 32-34 (N.D.N.Y. 2010); Club Candlewood Assocs., L.P. v. Home Fed. Sav. & Loan Ass'n (In re Club Candlewood Assocs., L.P.), 106 B.R. 758, 758-59 (N.D. Ga. 1989). The First Circuit has applied the equitable mootness doctrine in a variety of cases, recognizing the necessity of obtaining a stay pending appeal to preserve a party's position.

21

See, e.g., Soares v. Brockton Credit Union (In re Soares), No. 98-9013, 1998 WL 1085827, at *1 (1st Cir. Oct. 22, 1998) (affirming order dismissing an appeal from order granting relief from stay where the debtor failed to obtain a stay and the subject property was foreclosed); In re Pub. Serv. Co. of N.H., 963 F.2d at 473 (dismissing on mootness grounds an appeal of a confirmation order where, in the absence of a stay, performance under the plan had proceeded "to a point well beyond any practicable appellate annulment"); PPUC Pa. Pub. Util. Comm'n, 874 F.3d at 37 (stating, in the context of an order approving a sale, that "equitable mootness is appropriate where, in the absence of a stay, a sale has progressed so far that relief would be impracticable") (citing In re Pub. Serv. Co. of N.H., 963 F.2d at 473).

## II.     Equitable Mootness Principles Applied

Here, the Debtor never sought a stay of the Dismissal Order pending appeal, and there is no dispute that an auction of the Property has occurred.  Despite these developments, in their initial briefs the parties did not address the potential for mootness.  We, therefore, ordered supplemental briefing on the issue.

### A.     The Supplemental Briefs on the Mootness Issue

In its supplemental brief, the Debtor argues that the appeal is not moot for two reasons: (1) the local court has not entered an order confirming the sale, so the foreclosure sale is not yet final; and (2) despite the foreclosure, the Debtor still has assets, including inventory, furniture, equipment, accounts receivable, and operating accounts "that should be sufficient" to reorganize.  Loíza Ponce, on the other hand, argues the appeal is moot because: (1) the Panel cannot fashion a remedy now that the Property has been sold; (2) there is no longer a need for bankruptcy now that the foreclosure has taken place; (3) the Debtor has no ability to reorganize;

22

and (4) despite the local court's refusal to confirm the sale because of the pendency of this appeal, the sale is final.

**B.      Determining Whether the Foreclosure Sale is Final under P.R. Law**

Before deciding whether the Debtor's failure to obtain a stay of the Dismissal Order has rendered this appeal equitably moot, we must consider whether the foreclosure sale is final under Puerto Rico law.  A conclusion that the foreclosure is not final would obviate the need for an equitable mootness analysis.

The legal and factual support produced by the Debtor for its argument that the sale is not final is not entirely persuasive.  First, the Debtor points to pages in the record appendix which are in the Spanish language as evidence for the proposition that the local court did not confirm the sale, but we may not consider those pages.  See González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) (stating court should not consider documents provided in the Spanish language); see also 1st Cir. BAP L.R. 8011-1(b) ("The BAP will disregard any document(s) not in the English language unless a contemporaneous official, certified, or stipulated translation(s) is furnished.").

Second, the Debtor cites In re Lagares Santana, No. 18-07127 (ESL), 2020 WL 412185 (Bankr. D.P.R. Jan. 24, 2020), as standing for the proposition that the sale of the Property is not final because the local court has declined to confirm it.  The Debtor's interpretation of In re Lagares Santana, however, is debatable.  In that case, a Puerto Rico bankruptcy court thoroughly examined the Puerto Rico statutory scheme governing the finality of sales of real property and ruled that the "confirmation requirement" codified in Puerto Rico's "Article 107 does not intend to halt the sale or transfer of the property[.]"  Id. at *6.  The court elaborated:

> Moreover, Rule 51.7 of the Rules of Civil Procedure of Puerto Rico, 32 L.P.R.A. Ap. V, R. 51.7, states that the execution of the public deed by the marshal and the

23

buyer transfer the dominium of the real property. This court has previously determined that in a mortgage foreclosure sale, title of the property is transferred to the purchaser when the deed of judicial sale is executed. See In [r]e Hernandez, 244 B.R. 549 (Bankr. D.P.R. 2000)[;] In [r]e Martinez Ortiz, 306 B.R. 727 (Bankr. D.P.R. 2004). See also Rodriguez v. Naihomy (In [r]e Rodriquez), 334 B.R. 754 (1st Cir. B.A.P. 2005) and dissenting opinion at James Patrick Smyth Delgado v. Oriental Bank & Trust, 170 D.P.R. 73 (2007).

Id. at *6 (footnote omitted). Contrary to the Debtor's assertion, the foregoing excerpts from In re Lagares Santana suggest that a foreclosure sale is complete upon execution of the foreclosure deed—i.e., without a confirmation order from the local court.

The problem here is that the foreclosure deed is not a part of the record on appeal and, at oral argument, the parties disputed whether the deed exists or was executed. Because of this void in the record, we cannot assess the finality of the foreclosure sale, even if we were to follow Lagares Santana. See Harden Healthcare LLC v. OLP Wyo. Springs LLC (In re Senior Care Ctrs. LLC), No. 3:19-CV-2722-B, 2021 WL 632779, at *3 (N.D. Tex. Feb. 18, 2021) (ruling appeal of order approving settlement agreement was not equitably moot where, among other things, the record was unclear as to whether the sale at issue had been consummated). In light of this and the argument made by the Debtor that we could afford relief by allowing the Debtor to seek to reorganize using its remaining assets, we exercise our discretion to bypass the equitable mootness question and proceed to the merits. See Giancola v. Johnsondiversey, 157 F. App'x 320, 321 (1st Cir. 2005) ("In the interests of judicial economy, we now by-pass that potentially thorny [jurisdictional] issue to reach the relatively easy merits of this appeal.") (citation omitted); Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 n.7 (1st Cir. 2004) (recognizing that courts should decide "'jurisdictional' questions" first, unless the outcome of the appeal is "foreordained by circuit precedent") (citation omitted); Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d

489, 492 (1st Cir. 1997) (recognizing appellate court may "bypass" jurisdictional questions where appeal would fail on merits "even assuming jurisdiction") (citation omitted).

## STANDARD OF REVIEW

"When considering a bankruptcy court's decision . . . under § 1112(b), the Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." Efron v. Candelario (In re Efron), 529 B.R. 396, 405 (B.A.P. 1st Cir. 2015) (citations omitted). "The bankruptcy court . . . has broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause." Id. (citation omitted) (internal quotation marks omitted). Accordingly, the bankruptcy court's decision regarding "which relief to elect is reviewed for an abuse of discretion." Id.; see also In re Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990) ("Discretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion."). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." In re Efron, 529 B.R. at 405 (citation omitted) (internal quotation marks omitted). Abuse of discretion also occurs "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 37 (1st Cir. 2012) (citation omitted) (internal quotation marks omitted). Whether the debtor acted in bad faith is a finding of fact reviewed under the clearly erroneous standard. In re Four Wells Ltd., No. 15-8020, 2016 WL 1445393, at *2 (B.A.P. 6th Cir. Apr. 12, 2016) (citation omitted).

**DISCUSSION**

I.      **The Standard for Dismissal**

"Section 1112(b) governs conversion or dismissal of a chapter 11 case." In re Andover

Covered Bridge, LLC, 553 B.R. at 171.  That section provides, in pertinent part:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party
> in interest, and after notice and a hearing, the court shall convert a case under this
> chapter to a case under chapter 7 or dismiss a case under this chapter, whichever
> is in the best interests of creditors and the estate, for cause unless the court
> determines that the appointment under section 1104(a) of a trustee or an examiner
> is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7
> or dismiss a case under this chapter if the court finds and specifically identifies
> unusual circumstances establishing that converting or dismissing the case is not in
> the best interests of creditors and the estate, and the debtor or any other party in
> interest establishes that—
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within
>> the timeframes established in sections 1121(e) and 1129(e) of this title, or
>> if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for converting or dismissing the case include an act or
>> omission of the debtor other than under paragraph (4)(A)—
>>
>>> (i) for which there exists a reasonable justification for the act or
>>> omission; and
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by the
>>> court.

11 U.S.C. § 1112(b)(1)-(2).

Section 1112(b)(1) "invokes a two-step analysis, first, to determine whether 'cause'

exists either to dismiss or to convert the chapter 11 proceeding to a chapter 7 proceeding, and

second to determine which option is in the best interest of creditors and the estate." In re Costa

Bonita Beach Resort, Inc., 513 B.R. 184, 200 (Bankr. D.P.R. 2014) (quoting Rollex Corp. v.

Associated Materials, Inc. (In re Superior Siding & Window, Inc.), 14 F.3d 240, 242 (4th Cir. 1994), and citing In re Mech. Maint., Inc., 128 B.R. 382, 386 (E.D. Pa. 1991)).

### A. Cause

"The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case." Andover Covered Bridge, LLC, 553 B.R. at 171 (citation omitted). Although the Bankruptcy Code does not define "cause" as that term is used in § 1112(b), § 1112(b)(4) provides a "nonexclusive list of what constitutes cause." In re Colón Martinez, 472 B.R. at 144 (citation omitted) (internal quotation marks omitted). One ground is sufficient to establish cause under the statute. Id. (citation omitted). "In addition, the court may convert or dismiss a case for reasons that are not specifically enumerated in the section, provided that these reasons are sufficient to demonstrate the existence of cause." Id. (citation omitted) (internal quotation marks omitted).

### B. Best Interests of Creditors

After a finding of cause, "the court's discretion is limited; it must grant some form of relief unless § 1112(b)(2) applies." In re Korn, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (footnote omitted) (citations omitted). Once cause is found, "the burden shifts to the debtor to demonstrate . . . the 'unusual circumstances' that establish that dismissal or conversion to Chapter 7 is not in the best interests of the creditors and the estate." In re Costa Bonita Beach Resort, Inc., 513 B.R. at 195 (citation omitted). "The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest[s] of creditors and the estate." Id. (citations omitted).

27

## II. The § 1112(b) Standard Applied

The issue at the heart of this appeal is whether the Debtor filed its case in bad faith and, consequently, whether the petition was properly dismissed for cause under § 1112(b). While that section does not list bad faith or lack of good faith among the factors providing grounds for dismissal, as noted above, the First Circuit has held that the list in § 1112(b) is not exclusive and instructs that "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases." In re Gonic Realty Tr., 909 F.2d at 626 (citation omitted). "In construing what other factors are relevant, the bankruptcy court must use its 'sound judgment' and make its determination with the best interests of creditors as its highest goal." In re PM Cross, LLC, 494 B.R. 607, 617 (Bankr. D.N.H. 2013) (quoting In re Gonic Realty Tr., 909 F.2d at 626-27).

### A. Whether Bad Faith Constitutes Cause

The issue of whether lack of good faith ("bad faith") constitutes cause for dismissal is "unsettled," In re Ortiz Jimenez, No. 18-04070 (ESL), 2018 WL 5883912, at *6 (Bankr. D.P.R. Nov. 7, 2018), and "debated." OneUnited Bank v. Charles St. African Methodist Episcopal Church of Bos., 501 B.R. 1, 7 (D. Mass. 2013). The First Circuit "has expressly declined to decide" the issue. Id. (citation omitted). Nonetheless, "[t]here is a well-developed body of case law that holds that chapter 11 petitions can be dismissed for lack of good faith." In re PM Cross, LLC, 494 B.R. at 617 (citation omitted) (internal quotation marks omitted). Several courts of appeals have determined that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" to dismiss or convert a case under § 1112(b). See, e.g., NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108, 118 (3d Cir. 2004); Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs.

28

Ltd. P'ship), 52 F.3d 127, 131 (6th Cir. 1995); Humble Place Joint Venture v. Fory (In re

Humble Place Joint Venture), 936 F.2d 814, 816-17 (5th Cir. 1991); Carolin Corp. v. Miller, 886

F.2d 693, 698 (4th Cir. 1989); Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),

749 F.2d 670, 674 (11th Cir. 1984). In holding that lack of good faith could constitute cause for

dismissal, the Third Circuit explained:

> Four factors guide our adoption of a good faith standard—the permissive
> language of § 1112(b), viewed in light of its legislative history; the decisions of
> our sister courts of appeals; the equitable nature of bankruptcy; and the purposes
> underpinning Chapter 11.

In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999). The legislative history of the statute

reflects that "[t]he court will be able to consider other factors as they arise, and to use its

equitable powers to reach an appropriate result in individual cases." Id. (quoting H.R. Rep. No.

595, at 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6362).

"[T]he overwhelming majority of courts considering the issue agree that an implicit good

faith filing requirement exists under § 1112(b), and that a Chapter 11 case may be dismissed for

cause if it was filed in bad faith." In re SB Props., Inc., 185 B.R. 198, 203 (E.D. Pa. 1995)

(citations omitted). "The equitable nature of [the 'for cause'] determination supports the

construction that a debtor's lack of 'good faith' may constitute cause for the dismissal of a

petition." In re Albany Partners, 749 F.2d at 674. Most bankruptcy courts and at least one

district court within this circuit that have considered the issue in published opinions have also

concluded that bad faith constitutes cause for dismissal. See, e.g., OneUnited Bank, 501 B.R.

at 7; In re Ortiz Jimenez, 2018 WL 5883912, at *6; In re PM Cross, LLC, 494 B.R. at 617; In re

U.S. Adver. Inc., 131 B.R. 537, 540 (Bankr. D.R.I. 1991); In re Vill. Green Realty Tr., 113 B.R.

105, 115-16 (Bankr. D. Mass. 1990).[7] The Panel has not yet addressed this issue in the chapter 11 context, although it has previously ruled that lack of good faith is grounds for dismissal of a chapter 13 petition. See Torres Martinez v. Rivera Arce (In re Torres Martinez), 397 B.R. 158, 166 (B.A.P. 1st Cir. 2008).

We are persuaded by the abundant, well-reasoned authority holding that lack of good faith can constitute cause for dismissal of a chapter 11 petition under § 1112(b). Accordingly, the bankruptcy court below did not commit error when it so ruled.

**B.    Relevant Considerations in Determining Bad Faith**

The First Circuit has observed that courts that recognize a good faith requirement "impose a prima facie burden on the party seeking dismissal to demonstrate that the debtor filed the petition in bad faith." OneUnited Bank, 501 B.R. at 7-8 (citing In re Capitol Food Corp. of Fields Corner, 490 F.3d at 24). "Although the First Circuit did not delineate the contours of the prima facie burden placed upon the entity seeking dismissal of the petition, it intimated that petitions filed in response to 'catastrophic business events,' such as imminent foreclosures, are typically filed in good faith." Id. at 8 (quoting In re Capitol Food Corp. of Fields Corner, 490 F.3d at 25). "Similarly, the First Circuit noted that merely evincing the debtor's desire to 'frustrate creditors' does not alone demonstrate 'bad faith' because the Code recognizes the need for a 'breathing spell' as a proper purpose to file a petition." Id. (quoting In re Capitol Food Corp. of Fields Corner, 490 F.3d at 25). Still, "an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing." C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1310 (2d Cir. 1997) (citation omitted) (internal quotation

---

[7] But see In re Victoria Ltd. P'ship, 187 B.R. 54, 62 (Bankr. D. Mass. 1995) (declining to impose a good faith requirement in a single asset real estate case).

marks omitted). Thus, courts have considered whether there was a legitimate purpose to be served by the filing in making the good faith determination. See In re Foxcroft Square Co., 184 B.R. 671, 678 (E.D. Pa. 1995) (concluding filing was in good faith where it was "for the legitimate purpose of reorganization"); In re Colbran, LLC, 475 B.R. 289, 294-95 (Bankr. D. Mass. 2012) (highlighting the Fourth Circuit's focus on whether the chapter 11 filing served "a legitimate business purpose" in Carolin Corp., 886 F.2d at 700-01).

While there is no single formulation of what constitutes lack of good faith (or bad faith), courts have concluded that the good faith determination involves a fact-intensive inquiry. See Farnsworth v. Morse (In re Farnsworth), BAP No. MW 08-086, 2009 WL 8466786, at *7 (B.A.P. 1st Cir. Nov. 20, 2009) (citing, among others, Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 482 (1st Cir. 2005)). "In the analysis of whether a case has been filed in bad faith, [some] courts have used an eight-factor test." In re PM Cross, LLC, 494 B.R. at 618. The eight factors are:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two[-]party dispute between the debtor and secured creditors which can be resolved in the pending state court foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor cannot meet current expenses, including the payment of personal property and real estate taxes;

(8) the debtor has no employees.

Id. (citing In re C-TC 9th Ave. P'ship, 113 F.3d at 1311); see also In re Phoenix-Piccadilly, Ltd., 849 F.2d at 1394-95 (using a 6-factor test, essentially comprised of the same or similar considerations); In re Vill. Green Realty Tr., 113 B.R. at 115-16 (applying a 14-factor test). "[T]hese factors are generally applied in single asset real estate cases . . . ." In re AAGS Holdings LLC, 608 B.R. 373, 383 (Bankr. S.D.N.Y. 2019); see also State St. Houses, Inc. v. N.Y. State Urban Dev. Corp. (In re State St. Houses, Inc.), 356 F.3d 1345, 1347 (11th Cir. 2004) (stating the "Phoenix Piccadilly factors" remain "appropriate guidelines" for determining bad faith in single asset real estate cases).  The factors are not exhaustive and should not be rigidly applied.  In re State St. Houses, Inc., 356 F.3d at 1347.  All of the factors need not be present. See In re Thane Dev. Assocs. L.P., 143 B.R. 310, 312 (Bankr. D. Mass. 1992).  As one bankruptcy court observed, determining whether a debtor has filed a petition not in good faith requires "look[ing] at the totality of the circumstances."  In re U.S. Adver., Inc., 131 B.R. at 540 (citations omitted).

### C.    Whether the Factors Support a Finding that the Debtor's Petition was Filed in Bad Faith

The record in this case demonstrates that most of the factors identified above are present and support the bankruptcy court's finding that the totality of the circumstances of the Debtor's filing indicate a bad faith filing.[8]  Here, (1) the Debtor's primary and critical operating asset was

---

[8]  In an effort to present a comprehensive survey of the totality of the circumstances, this analysis employs, without adopting, the eight-factor test articulated by the Second Circuit in C-TC 9th Avenue Partnership and the New Hampshire bankruptcy court in PM Cross rather than other similar tests. The outcome would be the same under any of the cited tests given the similarity of factors.

the Property;[9] (2) the record reflects that the Debtor has eight unsecured creditors having a total of $946,467.20 in claims, which amount is notably smaller than Loíza Ponce's claim;[10] (3) the Property was the subject of two scheduled foreclosure sales; (4) the Debtor's financial problems involve primarily a two-party dispute that was litigated in the local court action; (5) the timing of a bankruptcy filing twice on the eve of a scheduled foreclosure auction could support an inference of an intent to delay and frustrate the legitimate efforts of Loíza Ponce to enforce its rights; (6) the Debtor has not paid property taxes; and (7) the Debtor has no employees. As for the "cash flow" factor, it appears that, while the Property generates income, the record supports the bankruptcy court's finding that the Debtor did not have access to that income during the time period relevant to this appeal.

We are mindful, however, that "in single asset real estate cases . . . many of the factors can be present[,] even in the absence of bad faith" and "courts must [therefore] take special care in the analysis of 'bad faith' in such cases." In re PM Cross, LLC, 494 B.R. at 618. Courts must look beyond mere indicia counting and also focus on the totality of the circumstances, In re U.S. Adver., Inc., 131 B.R. at 540, including whether the debtor has a legitimate possibility of reorganization. In re Colbran, LLC, 475 B.R. at 294-95. The bankruptcy court appears to have appreciated this concern, as it avoided adopting either the C-TC 9th Avenue Partnership or the

---

[9] Although the Debtor likely qualifies as a "single asset real estate" debtor under § 101(51B), this technicality is not outcome determinative. See In re Balboa St. Beach Club, Inc., 319 B.R. 736, 742 (Bankr. S.D. Fla. 2005) ("A single asset real estate is not *per se* a bad faith filing . . . ."). Rather, it is the totality of the circumstances that is determinative. Therefore, we do not examine whether the Debtor qualifies as a single asset real estate debtor within the meaning of § 101(51B).

[10] While the record indicates that the Debtor listed one other secured debt in the amount of $14,565,340.00—apparently stemming from the PRHFA grant—Loíza Ponce asserts that that amount is not required to be repaid unless there is a "recapture event," and the Plan filed by the Debtor did not contemplate any payments being made to PRHFA.

Phoenix-Piccadilly factors, focusing on the totality of the circumstances rather than a checklist. Moreover, the court specifically found that the "Debtor ha[d] not shown a likelihood to have a chapter 11 plan within a reasonable time . . . ." In re La Trinidad Elderly LP SE, 2019 WL 4410547, at *10. This assessment of the Debtor's reorganization prospects is supported by the record. Absent a viable objection based on substantial evidence, the proof of claim filed by Loíza Ponce constituted prima facie evidence of the validity and amount of that claim. Fed. R. Bankr. P. 3001(f); see also Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*.") (citations omitted). The Plan nonetheless classified Loíza Ponce's claim as a class 5, disputed unsecured claim—notably, as observed by the bankruptcy court, without a claim objection or adversary proceeding being filed or any substantial evidence in the record that might overcome the prima facie validity of that claim.

The two scenarios outlined in the Plan required that the Property be part of the estate; yet, as of the filing date of the Plan, the Property was all but lost—the foreclosure judgment had already entered, and the Debtor's motion for relief from judgment, petition for certiorari filed in the Court of Appeals of Puerto Rico, and motion for reconsideration of the denial of certiorari had been denied. The Plan did not provide for a scenario where the Property would be foreclosed. The Debtor's first allusion to a third alternative scenario for reorganization that did not require that the Debtor retain title to the Property was in the Second Supplement, which was filed after the Reconsideration Motion. Beyond the vague assertion that its remaining assets were "sufficient" to reorganize, however, the Debtor failed to identify the remaining assets with

specificity, establish their value, or even demonstrate that the assets were unencumbered. In fact, the record suggests that Loíza Ponce's security interest extended to those other assets. Thus, the bankruptcy court did not commit clear error in its findings or abuse its discretion when it found that the Debtor failed to establish a reasonable prospect of reorganization where the Plan did not meaningfully address the secured claim of Loiza Ponce or provide for operation of the Debtor's business without the Property. The record supports the bankruptcy court's finding that the petition "was not filed . . . for a valid bankruptcy purpose" and "was filed solely for the purpose of forestalling the imminent public sale of its real property." In re La Trinidad Elderly LP SE, 2019 WL 4410547, at *10.

Further, although the Debtor argues that possible harm to the elderly community of Puerto Rico amounts to an unusual circumstance which should have precluded dismissal, the record does not support this conclusion. The Debtor points to no evidence in the record supporting the contention that dismissal of the case would have an adverse impact on the elderly community or that—even if this established an unusual circumstance—dismissal was not in the best interests of the Debtor's creditors or estate as required by § 1112(b)(2). Moreover, § 1112(b) requires that, even where unusual circumstances exist, evidence must establish that there is a "reasonable likelihood" that a plan would be confirmed within applicable "timeframes." See 11 U.S.C. § 1112(b). As discussed above, the record supports the finding of the bankruptcy court that the "Debtor has not shown a likelihood to have a chapter 11 plan within a reasonable time . . . ." In re La Trinidad Elderly LP SE, 2019 WL 4410547, at *10.

Based on the foregoing, the bankruptcy court's finding that the totality of circumstances established that the Debtor's case was filed in bad faith was not clearly erroneous.

35

### D. The Debtor's Other Arguments

The Debtor's argument that the bankruptcy court dismissed its case prematurely by entering the Dismissal Order only days before the hearing on confirmation does not change this analysis. At least one court of appeals has considered and rejected a similar argument, stating:

> A Chapter 11 case can be dismissed at any time. . . . Creditors . . . need not incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.

In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) (citation omitted); see also In re Four Wells Ltd., 2016 WL 1445393, at *8 ("It is . . . without question that a bankruptcy court is not required to hold hearings on a disclosure statement and plan prior to determining whether to dismiss a case under . . . § 1112(b).").

The Debtor's argument that the bankruptcy court did not indicate why dismissal rather than conversion would be in the best interests of creditors is equally unavailing. First, the Debtor never claimed below or on appeal that conversion was in the best interests of creditors. Therefore, that issue is waived. See United States v. Lilly, 13 F.3d 15, 17-18 (1st Cir. 1994) (stating failure to raise arguments below results in waiver); Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 598 (1st Cir. 2002) (stating failure to raise an argument in briefing on appeal results in waiver). Second, bankruptcy courts are not required to provide the reason for choosing dismissal over conversion. See In re Walker, No. 3:13-CV-1653-VLB, 2014 U.S. Dist. LEXIS 138929, at *16 (D. Conn. Sept. 30, 2014) (stating § 1112(b)(b)(1) "does not require the bankruptcy court to make any specific identifications regarding the question of whether the best interests of the creditors and the estate favor dismissal rather than conversion"); see also Koerner v. Colonial Bank (In re Koerner), 800 F.2d 1358, 1368 (5th Cir. 1986) ("The bankruptcy judge is

not required to give exhaustive reasons for his decision. He is only required to comply with . . .

§ 1112(b) . . . ."); <u>In re AdBrite Corp.</u>, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (same). Third,

a review of the bankruptcy court's decision reflects that the bankruptcy court did consider the

best interests of creditors, carefully articulating the standard for choosing between conversion or

dismissal, and then choosing dismissal.

### III.     The Order Denying Reconsideration

Rule 59(e), made applicable in bankruptcy by Bankruptcy Rule 9023, does not state the

grounds on which relief may be granted, and "courts have 'considerable discretion' in deciding

whether to grant or deny a motion under the rule." <u>Nieves Guzmán v. Wiscovitch Rentas (In re</u>

<u>Nieves Guzmán)</u>, 567 B.R. 854, 863 (B.A.P. 1st Cir. 2017) (quoting <u>ACA Fin. Guar. Corp. v.</u>

<u>Advest, Inc.</u>, 512 F.3d 46, 55 (1st Cir. 2008)). It is well settled in the First Circuit that to meet

the threshold requirements of Rule 59(e), the motion "must demonstrate the reason why the court

should reconsider its prior decision and must set forth facts or law of a strongly convincing

nature to induce the court to reverse its earlier decision." <u>In re Ortiz Arroyo</u>, 544 B.R. 751, 756-

57 (Bankr. D.P.R. 2015) (citation omitted) (internal quotation marks omitted). The movant must

either clearly establish a "manifest error of law or fact" or must present "newly discovered

evidence." <u>Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago</u>

<u>Vázquez)</u>, 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012) (citing <u>Aybar v. Crispin-Reyes</u>, 118 F.3d 10,

16 (1st Cir. 1997)).

Here, the Debtor failed to establish a manifest error of law or fact. As the foregoing

analysis demonstrates, the bankruptcy court's findings of fact and legal conclusions were amply

supported by the record and case law. However, the question does arise as to whether the

bankruptcy court should have factored into its reconsideration analysis the foreclosure sale—a new fact which was disclosed in the Second Supplement filed by the Debtor in connection with the Reconsideration Motion. If this omission constituted error, however, any such error appears to have been harmless. See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005) (observing, in an immigration case, that a harmless error is one "that would [not] have made a dispositive difference in the outcome of the proceeding") (citation omitted).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the orders.